[L. A. No. 29117.   In Bank.   Feb. 3, 1967.]

MARGARET H. PALMER, Plaintiff and Respondent, v. FRANCES V. GREGG et al., as Coadministratrices, etc., Defendants and Appellants.

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.

Myron E. Harpole and Thomas P. Cruce for Defendants and Appellants.

J. E. Simpson for Plaintiff and Respondent.

MOSK, J.—Defendants appeal from a judgment in favor of plaintiff in her action to recover the reasonable value of services rendered decedent, De Nelson Smith, from August 8, 1960, to the date of his death, June 10, 1961, and the value of her services thereafter as caretaker of decedent's house at the request of his attorney.

At oral argument defendants abandoned their contention that the evidence does not support the trial court's award of compensation to plaintiff for her services. They urge, however, that the judgment erroneously allowed as additional damages the cost of gardening at her home in Palm Springs during the time she was in Los Angeles caring for decedent, and also that no interest should be allowed until such time as the probate court orders payment of the judgment. We have concluded that these points are well taken and the judgment should be modified accordingly.

The trial court found that shortly before August 8, 1960, the decedent became ill. He telephoned plaintiff, a friend of many years who resided in Palm Springs, and requested her to come to Los Angeles and take care of him. Plaintiff complied with decedent's importuning, and immediately upon her arrival took him to see his physician, Dr. Bolotin. The doctor diagnosed decedent's condition as heart failure and prescribed a regimen of bed rest, diet, drugs, and medicines. In addition, he strongly recommended that decedent go to a hospital. Decedent refused to comply with the latter recommendation, stating, according to Dr. Bolotin, that ''Mrs. Palmer [plaintiff] would take care of him.''

For approximately the next two months decedent was confined to the second floor of his home, and for the most part was required to remain in bed. The trial court found that during the entire 10-month period between August 8, 1960, and the date of decedent's death, June 10, 1961, plaintiff performed and rendered personal services at the request of decedent, consisting of acting as a practical nurse and housekeeper, doing the marketing, laundering, acting as his chauffeur, administering drugs and medicines pursuant to instructions from his doctors, watering the yard, and caring for and training decedent's dog.

Further, the court found that plaintiff frequently communicated with decedent's doctors respecting his condition, care and treatment, and was the only person who performed such

services for decedent during this period of time. Moreover, when plaintiff occasionally was absent from decedent's home, she arranged for someone else to be with him.

The court found that the services were rendered with the expectation on the part of both plaintiff and decedent that plaintiff would be compensated therefor, and "the reasonable value of the services so performed by plaintiff for Decedent" during the 10-month period was $7,344.

Our own review of the record convinces us that these findings are amply supported by the evidence.

Defendants do not challenge the determination made with regard to the second cause of action that plaintiff's services as caretaker after decedent's death were reasonably worth $601.04, the value set by the trial court.

Defendants complain of the award to plaintiff of reimbursement for the cost of gardening services performed at her home in Palm Springs during the period she was in Los Angeles taking care of decedent and later acting as caretaker. The trial court found that during the period prior to decedent's death plaintiff was required to employ a gardener to care for her Palm Springs home, and that the cost of said gardener was $400; the court made a similar finding with respect to the period during which plaintiff acted as caretaker for the estate, and the sum of $117.04 was awarded therefor.

We do not reach the question of the sufficiency of the evidence to support these findings; for reasons stated hereinafter, we have concluded that the allowance to plaintiff of her gardening expenses in an action in *quantum meruit* was error.

■ The measure of recovery in *quantum meruit* is the reasonable value of the services rendered, provided they were of direct benefit to the defendant. (*Rotea* v. *Izuel* (1939) 14 Cal.2d 605, 610-611 [95 P.2d 927, 125 A.L.R. 1424]; *Major-Blakeney Corp.* v. *Jenkins* (1953) 121 Cal.App.2d 325, 339-340 [263 P.2d 655]; *Lozano* v. *Thos. W. Blake Lumber Co.* (Tex.Civ.App. 1929) 16 S.W.2d 983.) As Professor Corbin states, "the defendant is regarded as a debtor to the extent of the value of something received by him and he is said to be under a legal duty sometimes called 'quasi contractual,' to make restitution of this value. In determining the amount of this value, expenditures made by the injured party are not included unless they [i.e., their benefits] were received by the defendant." (5 Corbin on Contracts (1964 ed.) § 996, p. 17.) ■ The facts of the present case suggest no exception

to the general rule: plaintiff's personal gardening expenses conferred no direct benefit on decedent, and accordingly cannot be recovered in this action.[1]

Defendants further contend the trial court erred in ordering that interest be payable on the principal sum involved in both counts from the date that each claim was presented (December 11, 1961). This contention is meritorious.

The law on the subject of allowable interest on a judgment based upon a rejected noninterest-bearing claim was settled by our decision in *Hilton* v. *McNitt* (1957) 49 Cal.2d 79, 83 [315 P.2d 1], in which we said, "Judgments ordinarily bear interest at the statutory rate. However, only after an order for payment is the executor obliged to pay any general claim against the estate (Prob. Code, §§ 951, 952). This court said in *Estate of Bell*, 168 Cal. 253, 258, 259 [141 P. 1179], that '[I]t is settled by our decisions that the allowance of a claim against a solvent estate is not equivalent to an ordinary judgment. It is a judgment only in a qualified sense, and does not attain the force and dignity of an absolute judgment until an order of court is made directing the executor or administrator to pay it. Until then it is simply an acknowledged debt of the estate, bearing interest at the contract rate. *It is only after such an order is made that it bears interest at the statutory rate.*' And in *Estate of Girard*, 110 Cal.App.2d 203, 204 [242 P.2d 669], the court stated that 'The only question presented to us is whether a non-interest-bearing debt of a decedent bears interest at the statutory rate from the date of the allowance and approval of the creditor's claim. We have concluded that under the existing statutory law it does not.' It follows, therefore, that plaintiff is entitled to interest at the statutory rate on the amount owed at the time of decedent's

---

[1]The rule espoused in the dissenting opinion of Chief Justice Traynor in *Coleman Engineering Co., Inc.* v. *North American Aviation, Inc.* (1966) *ante,* pp. 410, 418-420 [55 Cal.Rptr. 11, 420 P.2d 723], is inapplicable because, in contrast to the present case, the expenditures in *Coleman* were made *at the request* of the obligor *North American.*

Plaintiff's reliance on *Harrington* v. *Hoffmeyer* (1937) 19 Cal.App.2d 452 [65 P.2d 931], as supportive of the award for gardening expenses is also misplaced. In *Harrington*, a workman was disallowed $6.50 court costs alleged to have been incurred in a justice court action preceding the superior court action in which *quantum meruit* recovery was granted to him. The appellate court, affirming the disallowance, said solely: *"If it could be assumed* that such costs in another action might have been recovered in this action, we find no evidence in the record to sustain the finding that such an amount had been expended." (Italics added.) (*Id.* at p. 454.)

death only after the executor has been ordered to pay her claim.'' (Italics added.)

Unfortunately, some of the Courts of Appeal have seized upon and misconceived the effect of our failure to overrule or disapprove by name every case conflicting with the opinion in *Hilton*. (See De Meo, Cal. Estate Administration. (Cont. Ed. Bar 1960) § 10.40, pp. 230-231.) The rule enunciated in *Hilton* is controlling and all holdings inconsistent therewith are disapproved. (E.g., *Pico* v. *Stevens* (1861) 18 Cal. 376; *Luther* v. *Foster* (1957) 150 Cal.App.2d 725 [310 P.2d 655]; *White* v. *Deering* (1918) 38 Cal.App. 516 [179 P. 401].)

Plaintiff argues that even assuming a court order for payment of the creditor's claim for pre-death services was required, such an order was made. Plaintiff relies upon language of the judgment to the effect that the principal sum ''shall be paid by said defendants in due course of administration of said estate.'' Plaintiff insists this is ''a clear and express order for payment to be made by the administratrices of the Estate.''

An identical contention was advanced and rejected in *Estate of Cole* (1951) 106 Cal.App.2d 823, 825-826 [236 P.2d 206]. The court there stated, ''Appellant asserts that the order is more than an order allowing the claim, for the reason, so it is urged, that it directs payment of the claim. In this connection appellant points out that the order, after allowing the claim, provides that such claim is 'to be paid in the due course of administration.' This quoted provision merely added to the order of allowance what otherwise would have been necessarily implied by reason of the provisions of section 713 of the Probate Code. That section provides: 'Every claim allowed by the executor or administrator and *approved* by the judge shall be ranked among the acknowledged debts of the estate, *to be paid in due course of administration*; but the validity thereof may be contested by any person in interest, at any time prior to the settlement of the account of the executor or administrator in which it is first reported as an allowed and approved claim, unless established by a judgment against the executor or administrator. The date of allowance of each claim, together with the amount allowed, must be entered in the register by the clerk after the allowance or approval thereof by the judge.' (Italics added.)

''This section fixes the status of allowed claims, and it contains the very language of the order appealed from and relied upon by appellants to support their contention that this

is not an ordinary order allowing a claim, but one also directing payment. Had the order not contained the language that the allowed claim was 'to be paid in the due course of administration,' such a direction would have necessarily been implied by virtue of section 713. In other words, the phrase in question merely states the legal effect of a claim allowed by the administrator and approved by the court. At such time it becomes an acknowledged debt of the estate, and should, of course, be ultimately paid. [Citations.] The very purpose of securing the allowance of a claim is to have it paid in due course. But that does not make the order so providing a direction to pay. The proper and normal time for the court to order the payment of debts is when the approved claim is reported in an account after the time to file or present claims has expired. [Citations.]"

Plaintiff urges that whatever the nature of the rules applicable to the allowance of interest on a general claim against an estate, the claim in the instant matter is one for last illness and hence is not governed by the rules regarding general claims. Plaintiff points out that Probate Code section 950 lists eight classes of debts of a decedent and specifies the order in which they are to be paid.[2] She further notes that Probate Code section 951 provides that as soon as he has sufficient funds in his hands after retaining enough to pay the expenses of administration, "the executor or administrator must pay the funeral expenses, the expenses of the last illness, the family allowance, and wage claims to the extent of nine hundred dollars ($900) of each employee of decedent for work done or personal services rendered within 90 days prior to the death of the employer. . . ." With regard to general claims, however, she notes that section 951 provides,"but he

[2]Probate Code, section 950, provides: "The debts of the decedent, the expenses of administration and the charges against the estate shall be paid in the following order: (1) Expenses of administration; (2) Funeral expenses; (3) Expenses of last illness; (4) Family allowance; (5) Debts having preference by the laws of the United States; (6) Wages, to the extent of nine hundred dollars ($900), of each employee of the decedent, for work done or personal services rendered within 90 days prior to the death of the employer. If there is not sufficient money with which to pay all such labor claims in full the money available shall be distributed among the claimants in accordance with the amount of their respective claims; (7) Mortgages, judgments that are liens, and other liens, in the order of their priority, so far as they may be paid out of the proceeds of the encumbered property. If such proceeds are insufficient for that purpose, the part of the debt remaining unsatisfied shall be classed with the general demands against the estate; (8) Judgments that are not liens rendered against the decedent in his lifetime and all other demands against the estate, without preference or priority one over another."

is not obliged to pay any other debt . . . until, as prescribed by this article, the payment has been ordered by the court.'' Plaintiff concludes from these provisions of the Probate Code that the four classes of preferred and prior claims do not require a separate order of court for their payment, and hence that the rule announced in *Hilton* v. *McNitt* (1957 *supra*, 49 Cal.2d 79, and approved herein, is inapplicable to her claim.

We have concluded that whatever the rules applicable to the payment of interest on *noncontested* preferred claims an order of the probate court will be required before there can be payment of a contested preferred claim, and interest thereon should be allowable only from the date of that order. Moreover, inasmuch as the determination whether a claim falls within the ambit of a preferred class is an exclusive function of the superior court sitting as a court of probate, we need not determine the precise nature of the claims in the present matter.

*McLean* v. *Crow* (1891) 88 Cal. 644 [26 P. 596], is controlling here. In that case two physicians sought to recover for services allegedly rendered to the decedent during his last illness. In affirming the lower court's determination of the value of their services, this court indicated that a judgment on a claim for medical services did not establish that it was for expenses of last sickness, despite the fact that such was alleged in the pleadings. It was there noted that ''Generally, it is an easy thing to determine [whether a claim is preferred], the claim being recognized as a debt against the estate, whether it is or is not a preferred claim under section 1646 of the Code of Civil Procedure [identical in essential detail to present Prob. Code, § 951]. *In case of doubt, the administrator may refuse to pay until required by an order of the [probate] court.* At last the assets must be marshaled, and the order of payment determined, *by the probate court.* . . .'' (Italics added.) (*Id.* at p. 647.) (See also, *Chiapella* v. *County National Bank etc. Co.* (1933) 217 Cal. 503 [19 P.2d 983]; *Golden Gate Undertaking Co.* v. *Taylor* (1914) 168 Cal. 94, 100 [141 P. 922, Ann.Cas. 1915D 742, 52 L.R.A. N.S. 1152].)

Section 730 of the Probate Code provides that ''A judgment rendered against an executor or administrator, upon any claim for money, against the estate of his testator or intestate, when it comes final, *conclusively establishes the validity of the claim for the amount of the judgment.* . . .'' (Italics added.) But the section also indicates that ''No execution

shall issue upon the judgment, nor shall it create any lien upon the property of the estate, or *give the judgment creditor any priority of payment.*" (Italics added.) ▮▮ ▮▮ [fn. 3] This statutory language is supportive of the *McLean* rule that a judgment against the estate may not establish anything as to the character of the claim; whether or not it is preferred in rank, the class of the claim is for the determination of the probate court.[3] (Accord, 1 Condee, Cal. Probate Practice (2d ed. 1964) § 775, pp. 504-505.)

▮ The preference given to expenses of last illness is grounded in sound social policy. It is essential that everything reasonably possible to preserve a member of the family "be done through the care that the physician, the nurse and the hospital can give. The Legislature has, so far as it is possible by such legislation to do so, assured the ministration to the sick by making the charges for those services a highly preferred claim in the event of death." (*Estate of Jacobs* (1943) 61 Cal.App.2d 152, 156 [142 P.2d 454].) However, as strong as these policy factors are, the Legislature has not seen fit to bestow on creditors for services provided during the last illness a bounty in the form of interest over and above that allowed to general creditors.

Were we to hold that interest on a claim for last illness ran from the time of presentation or rejection of the claim, or from any other time prior to the necessary probate court determination (see *McLean* v. *Crow* (1891) *supra,* 88 Cal. 644), the rule might well cause executors and administrators to be fearful of rejecting doubtful claims for last illness expense because of the substantial interest payments that could result therefrom.

The judgment is modified by striking the sums of $400 and $117.04 allowed for plaintiff's gardening costs, and by disallowing all interest on the claim prior to an order of the probate court as required herein. As thus modified, the judgment is affirmed.

The parties are to bear their own costs on appeal.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., Burke, J., and Sullivan, J., concurred.

---

[3] While the Legislature has seen fit to permit interest on a claim for funeral expenses to run from the date of interment (Health & Saf. Code, § 7101), no such special provision can be found relating to the other preferred classes of claims.