[Civ. No. 31174.   Second Dist., Div. Four.   Mar. 27, 1968.]

KATHLEEN MATTES, Plaintiff and Respondent, v. EVA PINKNEY, as Executrix, etc., Defendant and Appellant.

492

Sidney Dorfman and Bertram L. Linz for Defendant and Appellant.

Daniel J. Jaffe for Plaintiff and Respondent.

FILES, P. J.—Defendant executrix appeals from a judgment for plaintiff in an action brought to recover the reasonable value of services rendered prior to decedent's death.

Charles Fowler died September 27, 1963. Defendant was appointed executrix of his estate valued at $27,000. Plaintiff was not named in the will. Neither plaintiff nor the legatees in the will were, as far as the record discloses, related to the decedent.

The action was tried before the court sitting without a jury. The court found that, prior to March 1962, the decedent was a suitor of plaintiff, and during that period plaintiff had performed services for which she did not expect or claim compen-

sation. During March 1962 plaintiff and decedent entered into an oral agreement whereby plaintiff would render various services such as cooking, shopping, cleaning, driving an automobile, caring for decedent and accompanying him on social occasions, in return for which decedent would compensate plaintiff by a provision in his will. The decedent failed to make any will thereafter, so that his estate passed under a will executed in 1943. The court found the reasonable value of plaintiff's services for the 18 months from March 1962 through September 27, 1963, was $200 per month, for a total of $3,600. Judgment was for plaintiff in that amount.

Because of the provisions of Code of Civil Procedure section 1880, subdivision 3, then in effect,[1] plaintiff did not testify concerning the making of the agreement.

Charles Figge testified that in April 1962 decedent stated that his relationship with plaintiff had changed and that "for Mrs. Mattes [plaintiff] having taken care of him and for taking care of him in the future that he was going to leave her his entire estate." Figge further testified that he had seen plaintiff drive decedent on a pleasure trip, clean decedent's apartment and cook decedent's dinner.

A nurse who cared for decedent in his last illness testified that decedent told her he did not have any relatives to be notified, and he requested her to call plaintiff to the hospital. Decedent also told the nurse that he wished plaintiff to have all his property as plaintiff had taken care of him for a little over two years, cleaning his apartment, cooking his meals, taking him places and helping him take care of his business. The nurse heard decedent instruct plaintiff to go to his apartment, take everything valuable, and destroy the will. He also said he wanted a new will made out so as to pay plaintiff for what she had done.

Three other witnesses testified as to services rendered by plaintiff for decedent during the 18 months immediately preceding his death.

Defendant produced evidence that, between August 1961

---

[1]Code of Civil Procedure section 1880:

"The following persons cannot be witnesses: . . .

3. [Actions against estates.] Parties or assignors of parties to an action or proceeding, or persons in whose behalf an action or proceeding is prosecuted, against an executor or administrator upon a claim, or demand against the estate of a deceased person, as to any matter or fact occurring before the death of such deceased person."

The new Evidence Code, operative January 1, 1967, eliminated this disqualification. See Evidence Code section 700 and Law Revision Commission comment to section 1261.

and January 1963, the decedent had given plaintiff checks in amounts ranging from $5 to $200, totaling $1,515. Of this sum, $800 was paid during the period for which plaintiff was claiming compensation.

Plaintiff testified, over objection, that she did not receive any compensation for her services. She explained the checks and cash received from decedent as reimbursement for moneys expended by her for groceries, liquor, laundry and gasoline purchased on decedent's behalf.

It is unnecessary to detail the evidence further. Some conflicting evidence was produced by defendant, but the findings of the trial court resolved the conflicts. The record is sufficient to support the trial court's findings and its conclusion that plaintiff was entitled to the reasonable value of the services rendered. (*Drvol* v. *Bant,* 183 Cal.App.2d 351 [7 Cal. Rptr. 1].)

The nature of the arrangement between plaintiff and the decedent was such that the court could only make an estimate of the value of the services rendered. Here the trial court made its valuation upon the theory that plaintiff performed as decedent's need arose. It would be highly unusual for persons in plaintiff's position to keep detailed records of hours worked. The value of this kind of service is a matter of common knowledge; hence the trial court was competent to fix a reasonable value. (*Williams* v. *McHugh,* 121 Cal.App.2d 116 [262 P.2d 608].)

"The court was not required to make findings as to the value per hour of the various services, or as to the number of hours spent in performing the various services." (*Johns* v. *Coleman,* 176 Cal.App.2d 778, 784 [1 Cal.Rptr. 784].)

The situation in this case may not be compared to *Weiner* v. *Davies,* 248 Cal.App.2d 387 [56 Cal.Rptr. 546]. That case involved a commercial transaction in which one would expect the parties to have detailed records. In addition, there was in that case an express written request (pursuant to Code Civ. Proc., § 634) for such a finding. Neither condition exists in the present case.

Defendant has argued that plaintiff is, estopped because she filed, three days before decedent's death, a verified petition for the appointment of a conservator, in which she alleged that she was not a creditor of said Charles H. Fowler. In one sense the allegation was true because, under the arrangement she had with decedent, no payment was due her during his lifetime. Regardless of how that petition is

interpreted or explained, there was no estoppel, for no one was misled. (See *Johnson* v. *Johnson,* 179 Cal.App.2d 326, 331 [3 Cal.Rptr. 575].) At most, the petition was evidence to be considered by the trial court for whatever value that court saw in it as impeachment of plaintiff's testimony.

Defendant further contends that it was error to receive the testimony of plaintiff that she had not received payment for her services, this being testimony as to a matter occurring before the death of the decedent, excluded by section 1880. (*Robinson* v. *Dugan,* 4 Cal. Unrep. 472, 476 [35 P. 902].)

In *Burgermeister* v. *Wells Fargo Bank etc. Co.,* 191 Cal. App.2d 624, 633 [13 Cal.Rptr. 123], the admission of similar evidence was found to have been harmless. The same disposition is appropriate here. The burden of proving payment was upon defendant. No evidence of payment was offered except the fact that checks totaling $800 had been given to plaintiff during the period of her services. The record showed similar checks during an earlier period when no compensation was promised or expected. The arrangement between plaintiff and decedent, as proved by the testimony of third parties, was that payment was to be by will. The trial court's finding that this agreement had been made is inconsistent with defendant's theory that those checks were payment for services. The admission of plaintiff's testimony as to nonpayment cannot be said to have caused a miscarriage of justice in this case, and therefore cannot be relied upon as a ground of reversal. (Cal. Const., art VI, § 13.)

Plaintiff concedes that the judgment erroneously fails to provide for payment in the due course of administration (Prob. Code, § 730) and that the judgment erroneously awards interest from the date the creditor's claim was rejected. (*Palmer* v. *Gregg,* 65 Cal.2d 657, 661 [56 Cal.Rptr. 97, 422 P.2d 985].)

Plaintiff's counsel has advised that, prior to the filing of the record on appeal in this court, he discovered that error and offered to stipulate to a modification of the judgment. Had defendant not desired to argue other issues, the appeal would never have reached this court. Under the circumstances plaintiff, as the successful party on all contested issues, should recover costs.

The judgment is modified by striking the words "together with interest thereon at the rate of seven percent (7%) from

April 23, 1964 amounting to $507.50'' and inserting the words ''payable in the due course of administration.''

As so modified, the judgment is affirmed. Respondent will recover costs on appeal.

Jefferson, J., and Kingsley, J., concurred.