[No. A069821. First Dist., Div. Three. Nov. 1, 1996.]

PETER VALENTINE et al., Plaintiffs and Respondents, v.
ROD READ et al., Defendants and Appellants.

**COUNSEL**

Larry D. Henson and Kathryn M. Murphy for Defendants and Appellants.

Nikolai Tehin and James J. O'Donnell for Plaintiffs and Respondents.

**OPINION**

PARRILLI, J.—In this case we consider some ramifications of the statutes governing creditors' claims against a deceased trust settlor, when neither

probate nor trust creditor claims proceedings have been instituted. We conclude the statutory scheme protects the interests of creditors and trust beneficiaries, shields the trustee from liability to creditors for making trust distributions, and may be applied in this case without violating the settlor's intended disposition of her estate.

Peter and Judy Valentine brought an action for breach of a will contract and recovery in quantum meruit against the Dame Judith Anderson Trust and Rod and Jan Read. Judy Valentine is a niece of the late actress Dame Judith Anderson (Dame Judith). Peter Valentine is Judy's husband. Jan Read is another niece of Dame Judith, and her husband Rod Read is trustee of the Dame Judith Anderson Trust, a revocable living trust. The Valentines recovered a $320,066 judgment on their quantum meruit cause of action for services rendered to Dame Judith during her lifetime. The judgment holds the Reads individually liable to the extent they received assets from the trust.

The Reads appeal, contending (1) there is no basis for holding Rod Read individually liable, or for holding Jan Read liable in excess of the proportion her share of the trust estate bears to the total trust distributions; (2) the trial court erroneously admitted evidence of compensation earned by Peter Valentine as trustee of other trusts; and (3) there was no substantial evidence to support the jury's findings on the value of the Valentines' services. We agree that under the governing statutes, Rod Read may not be held individually liable and Jan Read's liability must be proportional to her share of the distributions from the trust estate. We reject the Valentines' claim that the Reads are liable on a constructive trust theory. We also reject the Reads' evidentiary contentions.

## BACKGROUND

Dame Judith died on January 3, 1992. Shortly thereafter the Valentines filed their complaint, alleging breach of an agreement by Dame Judith to will her Montecito residence to Judy Valentine. The Valentines also filed a lis pendens on the property. The case was tried before a jury, which rendered a special verdict on October 1, 1993, finding Dame Judith had breached an oral contract to will her house to Judy in exchange for services. The jury awarded Judy $750,000, which was the appraised value of the house. The special verdict form instructed the jury that if it awarded damages for breach of contract, it was not to consider the Valentines' quantum meruit claim.

The trial judge refused to enter judgment on this verdict. The judge agreed with the Reads' contentions that the verdict was only advisory, and the breach of contract claim was an equitable one for the court to determine. The

judge found no evidence sufficient to support a will contract, and set another jury trial on the Valentines' quantum meruit claims. The Valentines sought review by petition for a writ of mandate, which this court summarily denied. The Valentines have not cross-appealed to challenge the trial judge's ruling on the first jury verdict.[1] That ruling left no pending claims affecting the title or right to possession of Dame Judith's residence. As a result, the Reads obtained an order expunging the lis pendens on January 14, 1994. The residence was sold during 1994.

On December 12, 1994, another jury found in the Valentines' favor on their quantum meruit claim, and awarded them $320,066.[2] The Valentines proposed a judgment holding the Reads individually liable to the extent they received assets distributed from the trust. They contended that since the Probate Code trust creditor claims procedure had not been used in the administration of Dame Judith's trust, trust distributees were subject to personal liability under Probate Code sections 19400-19403.[3] They also argued the court had equitable jurisdiction to impose a constructive trust on distributions received by the individual defendants.

The Reads objected to the proposed judgment, noting the trial judge had not allowed the Valentines to explore the disposition of the trust estate during trial. They contended there was no showing of any wrongful taking to support a constructive trust. They pointed out that sections 19400 and 19402 limit a trust beneficiary's liability to (1) amounts that cannot be satisfied from the trust estate, and (2) a pro rata portion of the creditor's claim based on the proportion between the beneficiary's distribution and the total trust distributions. Since Rod Read was not a trust beneficiary, and the Valentines had not established Jan Read's proportional share of the trust distributions, the Reads urged that judgment be entered solely against the Dame Judith Anderson trust.

In response, the Valentines reminded the trial judge of an unreported conversation in his chambers during which the Reads' counsel stated that Rod Read had distributed trust funds to Jan Read. The Valentines claimed, without referring to any evidence, that Jan received all but $300,000 of the trust assets, an amount in excess of $1 million net of taxes. They noted the Reads were residents of Australia, and speculated the trust funds needed to

---

[1]Our summary denial of the writ petition did not establish law of the case. (*Kowis* v. *Howard* (1992) 3 Cal.4th 888, 898 [12 Cal.Rptr.2d 728, 838 P.2d 250].)

[2]The award was broken down as follows: $103,094 for Judy's services and $51,150 for her expenses; $149,322 for Peter's services and $16,500 for his expenses. The jury found the Valentines had received $128,000 in goods or money from Dame Judith, but that none of this amount should be set off against their recovery.

[3]Further statutory references are to the Probate Code, unless otherwise specified.

satisfy the judgment might already have left the United States. The Reads responded in turn that the Valentines had made no effort to prevent distributions from the trust estate, and that distributions had been made to all beneficiaries, including the Valentines' children. The trial judge entered judgment in the form proposed by the Valentines.

## DISCUSSION

### 1. *The Reads' Liability Under the Trust Law*

#### A. *Overview of the Creditor Claims Procedure*

The Trust Law is contained in division 9 of the Probate Code. (§ 15000 et seq.) The 1991 Legislature added part 8 to division 9, to provide for the payment of claims, debts, and expenses from the revocable trusts of deceased settlors who died on or after January 1, 1992. (§§ 19000 et seq., 19012, subd. (a); see Stats. 1991, ch. 992.) The procedures established by the new statute are similar to those providing for the handling of creditors' claims in the administration of decedents' estates. (See §§ 9000 et seq., 11400 et seq.) However, unlike probate administration, trust creditor claims proceedings are not mandatory. (§ 19010; cf. § 7001 [decedent's property is subject to probate administration and to rights of creditors].) Only trustees and trust beneficiaries are authorized to initiate trust creditor claims proceedings. (§§ 17200, subds. (a) and (b)(20), 19003, subd. (a).)

Property held in a revocable living trust is not subject to probate administration after the settlor dies. (*Estate of Parrette* (1985) 165 Cal.App.3d 157, 164 [211 Cal.Rptr. 313].) If the settlor had other property that is involved in probate administration, and the trustee has actual notice of the probate proceeding, creditor claims proceedings under section 19000 et seq. may not be initiated. (§ 19003, subd. (a).) In such a case, "the protection from creditors afforded the personal representative of the deceased settlor's estate shall be afforded to the trustee and to the beneficiaries of the trust." (§ 19006, subd. (b); see §§ 9000 et seq. [creditor claims in estate proceedings] and § 21400 et seq. [abatement of shares received by beneficiaries of will or trust when estate is insufficient to pay debts].) If probate proceedings are instituted after the initiation of trust creditor claims proceedings, the trustee may recover from the estate any debts paid from trust assets that would otherwise have been satisfied by property subject to the probate proceedings. (§ 19006, subd. (c).)

Once notice to creditors is provided as prescribed in sections 19040-19054, all claims against the trust must be filed in the creditor claims

proceeding; otherwise, they may not be collected from trust assets and no action on the claim may be maintained against the trust. (§ 19004.) A creditor whose claim is rejected by the trustee must either bring an action on the claim or submit it to a referee or to arbitration in order to preserve the right to recover. (§§ 19250, 19255, subd. (a).) The creditor must file in the trust proceeding a notice of the pendency of the action or other proceeding on the claim. (§ 19255, subd. (c).) All money judgments against the settlor must be satisfied in the course of the trust administration proceedings; independent enforcement proceedings are barred, except for claims secured by an execution lien at the time of the settlor's death. (§§ 19300, 19301.)

The trustee need not initiate creditor claims proceedings, and may not be held liable for failing to do so. (§ 19010.) If there is neither a probate proceeding nor a trust creditor claims proceeding, "the liability of the trust to any creditor of the deceased settlor shall be as otherwise provided by law." (§ 19008.) Furthermore, trust beneficiaries who have received distributions from the trust under these circumstances are exposed to personal liability. (§ 19400.) Such distributees "may assert any defenses, cross-complaints, or setoffs that would have been available to the deceased settlor if the settlor had not died." (§ 19402, subd. (a).) Their liability is limited to amounts that cannot be satisfied out of the trust estate, and to a pro rata portion of the creditor's claim based on the proportion their distribution bears to the total distributions from the trust estate. (§ 19402, subd. (b).)

### B.  *Limitations on the Valentines' Recovery*

In this case, Dame Judith's estate was not submitted to probate and no creditor claims proceeding was initiated under section 19000 et seq. The Valentines admit that Jan Read's personal liability is subject to sections 19400 and 19402. However, they argue the pro rata limitation imposed by section 19402, subdivision (b) should not be applied because it would upset the distribution scheme established by Dame Judith's trust. The trust calls for payment of claims and debts from the principal of the trust estate before any distributions are made to beneficiaries. It then provides for specified distributions, with the residue of the trust estate going to Jan Read. The Valentines contend that applying the pro rata allocation specified in section 19402, subdivision (b) would unjustly increase Jan Read's distribution and subject the other beneficiaries to liability that was not intended by Dame Judith.

The Valentines overlook the fact that the other beneficiaries were not actually exposed to any liability because the Valentines did not join them as defendants. If the other beneficiaries were sued, they would have been

alerted to their potential liability under section 19402, subdivision (b). They could have notified Rod Read, as trustee, not to make distributions that would subject them to personal liability. Certainly a trustee could not make distributions that might result in increasing his wife's share at the expense of the other beneficiaries without violating his duties to deal impartially with all beneficiaries (§ 16003) and to avoid conflicts of interest (§ 16004). Doing so would expose him to liability to the other beneficiaries for breach of trust.[4] (§ 16420; see 11 Witkin, Summary of Cal. Law (9th ed. 1990) Trusts, § 133 et seq., p. 992 et seq.; Cal. Trust Administration (Cont.Ed.Bar 1996) § 14.32, pp. 555-558.) Joining the other beneficiaries as defendants might also have motivated them to petition for the institution of creditor claims proceedings, as they are authorized to do under section 17200, subdivision (b)(20). This would not only have insulated the beneficiaries from personal liability (except as provided in section 19401, governing claims of creditors who do not receive notice of the claims proceeding), but also would have provided the Valentines with the protections afforded by the trust creditor claims procedure.

■ Even in the absence of creditor claims proceedings, the statutory scheme provides the Valentines a complete remedy for recovering their claim under sections 19400 and 19402. Any beneficiaries who might have been exposed to liability had remedies to protect their own interests. Thus, there is no reason why the pro rata scheme of section 19402, subdivision (b) should not be applied to Jan Read's liability. There is also no reason to disregard the plain meaning of the statute. (*California Fed. Savings & Loan Assn.* v. *City of Los Angeles* (1995) 11 Cal.4th 342, 349 [45 Cal.Rptr.2d 279, 902 P.2d 297]; *DaFonte* v. *Up-Right, Inc.* (1992) 2 Cal.4th 593, 601 [7 Cal.Rptr.2d 238, 828 P.2d 140].) Because the judgment fails to account for the statutory limitation on Jan Read's liability, remand is required to determine if the trust estate is insufficient to satisfy the judgment, and if so her proportionate share of liability.

It is also clear that the statutory scheme provides no ground for holding Rod Read individually liable. When no creditor claims proceeding is filed, the Legislature contemplated satisfaction of creditors' claims first from the trust estate, and then from beneficiaries who receive distributions from the trust. It did not contemplate that a trustee who makes distributions would incur personal liability to the settlor's creditors.

---

[4]We emphasize there was no evidence of any trust distributions in this case, although the arguments of counsel both below and on appeal indicate that distributions were made. We do not suggest Rod Read acted improperly. We explore the hypothetical consequences of trust distributions under the circumstances described above only to show that the beneficiaries the Valentines claim would be prejudiced by application of section 19402, subdivision (b) have ample means to protect their interests.

### 2. *The Reads May Not Be Held Liable on a Constructive Trust Theory*

■ The Valentines argue the judgment properly holds the Reads individually liable based on "the equitable principle that one who wrongfully acquires property of another holds the property as an involuntary constructive trustee." (Civ. Code, §§ 2223 and 2224.) This argument fails because there is no showing of any wrongful acquisition by the Reads. It may be, as the Valentines allege, that Dame Judith's trust was liquidated during the litigation in order to render collection of a judgment more difficult. But as discussed above, in the absence of formal creditor claims proceedings the Trust Law contemplates that trust assets subject to creditors' claims may be distributed, and preserves the creditors' remedy against the distributees. Thus, the Valentines are in no position to claim the Reads wrongfully acquired trust assets. Furthermore, by asserting their right to recover from all distributees, the Valentines could have put effective pressure on Rod Read not to make distributions, which would have preserved the trust estate for satisfaction of the judgment.

### 3. *Evidence of Peter Valentine's Compensation as a Trustee Was Properly Admitted*

■ The Reads moved *in limine* to exclude any evidence of Peter Valentine's experience and compensation as a trustee for certain family trusts. They contended this evidence was not relevant to the evaluation of his services as an investment adviser to Dame Judith, because he never acted as a trustee for her. The trial judge denied the motion, ruling it was for the jury to consider whether Peter Valentine's services were those of a trustee and to what compensation he might be entitled. The Reads contend this was an abuse of discretion. They concede for purposes of argument that Peter Valentine performed similar services for Dame Judith and for the family trusts of which he was a trustee. However, they argue that because he did not have a trustee's responsibility over Dame Judith's assets, there is no reasonable basis for using his compensation as a trustee to determine the value of his services to her.

The Reads argue that similarity of service without similarity of responsibility renders evidence of compensation for other services inadmissible to establish quantum meruit recovery. However, they cite no authority for this proposition. Peter Valentine was entitled to recover the reasonable value of his services to Dame Judith if, as the jury found, he and Dame Judith had expected he would be compensated. (*Drvol* v. *Bant* (1960) 183 Cal.App.2d 351, 356 [7 Cal.Rptr. 1]; *Mattes* v. *Pinkney* (1968) 260 Cal.App.2d 491, 494 [67 Cal.Rptr. 255]; BAJI No. 10.71.) The Reads were free to argue to the

jury that Peter Valentine's compensation should not be measured by the compensation he received as a trustee because his responsibilities were less than those of a trustee. The trial judge did not err in denying the Reads' motion *in limine.*

### 4. *The Reads Have Not Shown a Lack of Substantial Evidence*

The Reads mount a perfunctory challenge to the substantiality of the evidence supporting the jury's valuation of the Valentines' services. Regarding Peter Valentine, they rely only on their argument that evidence of his compensation as a trustee was improperly admitted. We have rejected this contention. Regarding Judy Valentine, they claim only that the Valentines' expert witness, who testified to a value of $22 per hour for Judy's services as a personal assistant, had no knowledge of the labor market in the Santa Barbara area where Dame Judith lived. More is required of an appellant who asserts a lack of substantial evidence. ■ A fair statement of all the evidence, including that supporting the judgment, must be provided or else the issue may be deemed waived. (*State Farm Fire & Casualty Co.* v. *Jioras* (1994) 24 Cal.App.4th 1619, 1625, fn. 4 [29 Cal.Rptr.2d 840]; *Oliver* v. *Board of Trustees* (1986) 181 Cal.App.3d 824, 832 [227 Cal.Rptr. 1].)

The Valentines note the Reads also submitted expert testimony on the value of Judy's services, ranging from $8 per hour for a personal attendant to $15 per hour for a personal secretary. Judy testified she spent about 70 days a year with Dame Judith over a 20-year period. The jury's award of $103,094 for Judy's services was within the range supported by the evidence.

### DISPOSITION

The judgment is reversed with respect to the Reads' individual liability, and the matter is remanded for determination of Jan Read's liability under section 19402, subdivision (b). Rod Read may only be held liable as trustee of the Dame Judith Anderson Trust. The judgment is otherwise affirmed. The parties shall bear their own costs on appeal.

Phelan, P. J., and Corrigan, J., concurred.