[No. A095702. First Dist., Div. Two. May 8, 2002.]

MONTIE S. DAY, Plaintiff and Appellant, v.
ALTA BATES MEDICAL CENTER, Defendant and Respondent.

COUNSEL

Montie S. Day, in pro. per., for Plaintiff and Appellant.

Fleer, Daugherty & Raub, John L. Fleer and Rise A. Donlon for Defendant and Respondent.

OPINION

HAERLE, J.—

## I.  INTRODUCTION

This is an appeal from a summary judgment entered in favor of a hospital (Alta Bates) in a quantum meruit action filed against it by appellant Day, an attorney (Day). Alta Bates had filed a hospital lien (see Civ. Code § 3045.1 et seq. (section 3045.1)) in a previous, but unsuccessful, medical malpractice action Day had filed on behalf of a woman who had been treated at that hospital. Day contended below, and contends here, that the filing of the lien required him to perform, and he did perform, legal services on the hospital's behalf for which he is entitled to be compensated by it.

Like the trial court, we disagree with that contention and hence affirm.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

In 1995 or 1996, Day filed a medical malpractice action in Alameda County Superior Court on behalf of one Demitrianna Jackson; the action was

entitled *Jackson v. Streitfeld*, No. 762468-7, in that court (*Jackson* action). On May 17, 1996, a Newport Beach-based collection agency, Hoffman, Hoffman & Associates (Hoffman), filed a notice of lien with Day on behalf of its client, Alta Bates. Day's client, Jackson, had been treated at Alta Bates from, apparently, February 10, 1995, until her discharge on March 24 of that year. On account of those services, Alta Bates asserted, pursuant to section 3045.1 and via the Hoffman agency, a lien for services in the amount of $45,165.43.

Simultaneous with filing the lien, Hoffman wrote Day requesting the name, address, etc., of his client's insurance carrier and stating, among other things, that Day personally "may have liability if you have disbursed settlement funds without satisfying [Alta Bates's] bill for hospital services."

Day apparently did not respond in writing to the May 1996 notice of lien or accompanying letter until June 9, 2000. On that day, he sent a fax letter to Hoffman in which he acknowledged the lien being asserted, but then stated that "it is my belief that the lien is invalid, but in that you are asserting such a lien, I am trying such case." He went on to advise that a bifurcated trial (with the issue of liability being tried first) was starting that day, and requested that John Hoffman, Jr., an attorney with Hoffman, "appear on behalf of Alta Bate [*sic*] Medical Center, the lien claimant" that day. He also stated: "While I am being required to present the case which would include your lien claim, it is absolutely essential that you produce a witness from Alta Bates Medical Center to establish the charges for which you make a lien claim. Also, I would have to meet with the witness before such witness testifies." Day concluded by again stating that, although he did not "acknowledge the validity of such lien claim, . . . it is absolutely essential that the amount of the lien claim for the reasonable charges be submitted to the jury. . . . I will expect Mr. Hoffman, on behalf of Alta Bates Medical Center, to cooperate with me in the prosecution of this case as I am being required to prosecute the case on behalf of Alta Bates' lien claim."

As far as the record discloses, Hoffman responded to this letter via a two-line e-mail dated June 13, 2000, stating the name of the potential witness "who will testify re the hospital's bill," asking Day to let him know when that witness would be needed, and confirming that it was the hospital that was asserting the lien via Hoffman as "their collection agent." There then followed a series of four e-mail messages from Day to Hoffman. In sum, these various messages (1) acknowledged Hoffman's June 13 e-mail, (2) advised him generally regarding the progress of the liability phase of the trial, (3) suggested that, if his client won on the liability phase (which was going to the jury shortly), a witness from Alta Bates would probably be

necessary the following day, (4) strongly urging that any such witness, or an attorney for Alta Bates, be prepared to "argue the validity of the lien" and (5) concluded by requesting case authority supporting the validity of the lien. As best as can be determined from the record before us, none of these e-mails elicited any response from either Hoffman or Alta Bates.

In any event, shortly after the last of these e-mails was sent, the jury in the *Jackson* action returned a defense verdict in the liability phase of that case. On behalf of Jackson, Day negotiated a waiver of her right to appeal for a waiver of costs.

On August 30, 2000, Day wrote a letter to both Alta Bates and Hoffman demanding to be compensated on a quantum meruit basis for the value of the services he had performed for Alta Bates in connection with the *Jackson* action. Among other things, the letter asserted: "In making your claim and demands, you required that I proceed to attempt to make a recovery which, if made, would benefits [*sic*] Alta Bates Medical Center/Herrick Hospital, and accordingly, while my contractual client, Ms. Jackson, may benefit, so may Alta Bates Medical Center/Herrick Hospital. Accordingly, Alta Bates Medical Center/Herrick Hospital required that I render services which were to its benefit. . . . [¶] . . . These services were demanded as a result of the notice of lien and the demand that the claim be represented. . . . [¶] Accordingly, at this time, there is only one remaining issue which is outstanding, and that is my claim for the reasonable value of attorney fees and costs which I expended for the benefit of Alta Bates Medical Center/ Herrick Hospital."

The letter demanded, as compensation for his services, 50 percent of Day's fees "at my normal rate," together with 50 percent of his costs, which equaled slightly over $49,000. Day concluded by suggesting a willingness to compromise for the prompt payment of $40,000.

On behalf of both that firm and Alta Bates, Hoffman flatly rejected this demand and offer, calling the allegations of Day's August letter "ludicrous" and a purported lawsuit "frivolous."

On October 2, 2000, Day filed suit against both Hoffman and Alta Bates on, as noted, a quantum meruit theory. Alta Bates answered in February 2001.

In April 2001, Day and Alta Bates's counsel stipulated that Hoffman was acting strictly as an agent for Alta Bates in its dealings with Day in the *Jackson* action. In the same month, Alta Bates moved for summary judgment

and Day moved for summary adjudication of seven affirmative defenses asserted by Alta Bates in its answer. In support of its motion for summary judgment, Alta Bates submitted a declaration from Hoffman asserting that: "At no time, and in no manner did I, or any employee or agent of Hoffman . . . communicate to plaintiff a request or demand for plaintiff to render legal services of any kind on behalf of [Alta Bates]."

Both of the motions were, of course, opposed and, after much briefing back and forth, were argued to the superior court on May 21, 2001. The court granted Alta Bates's motion, commenting that "I can't even find an implied request [for services] here." In its formal order, it granted Alta Bates' motion on the basis that "plaintiff has no evidence to show that defendant either requested that plaintiff work on its behalf or that defendant directly benefited from plaintiff's work." Judgment in favor of Alta Bates was entered on June 1, 2001, and Day timely appealed.

## III. DISCUSSION

For two separate and distinct reasons, the summary judgment in favor of Alta Bates must be affirmed. The two reasons are: (1) as noted by the superior court in its order, Day made no showing that his services were either performed "at the request" of Alta Bates or were of "direct benefit" to it and (2) under recent California Supreme Court precedent applicable here, Day was representing only Jackson in her litigation and cannot recover fees against a lien claimant who might arguably have received an "incidental benefit" from his actions. We will deal with these points in that order.

### A.

First of all, in order to recover under a quantum meruit theory, a plaintiff must establish *both* that he or she was acting pursuant to either an *express or implied request* for such services from the defendant *and* that the services rendered were *intended to and did benefit* the defendant. One court summarized the rule as follows: "The theory of quasi-contractual recovery is that one party has accepted and retained a benefit with full appreciation of the facts, under circumstances making it inequitable for him to retain the benefit without payment of its reasonable value." (*Truestone, Inc. v. Simi West Industrial Park II* (1984) 163 Cal.App.3d 715, 724 [209 Cal.Rptr. 757]; see also 1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, §§ 112-114, pp. 137-139.)

The importance of the "benefit" part of the rule was stressed in a recent decision by one of our sister courts, *Maglica v. Maglica* (1998) 66

Cal.App.4th 442 [78 Cal.Rptr.2d 101] (*Maglica*): "The classic formulation concerning the measure of recovery in quantum meruit is found in *Palmer* v. *Gregg* [(1967)] 65 Cal.2d 657 [, 661] [56 Cal.Rptr.97, 422 P.2d 985]. Justice Mosk, writing for the court, said: 'The measure of recovery in *quantum meruit* is the reasonable value of the services rendered *provided* they were of direct benefit to the defendant.' [Citations.] [¶] . . . [¶] The idea that one must be *benefited* by the goods and services bestowed is thus integral to recovery in quantum meruit; hence courts have always required that the plaintiff have bestowed some benefit on the defendant as a prerequisite to recovery. [Citation.]" (*Maglica, supra,* 66 Cal.App.4th at pp. 449-450.)

The second prong is that there must be either an explicit or implicit request for the services. As one court framed this requirement: "[A] recipient of services performed either requested or acquiesced in them . . . ." (*Producers Cotton Oil Co. v. Amstar Corp.* (1988) 197 Cal.App.3d 638, 659 [242 Cal.Rptr. 914].) Indeed, when the services are rendered by the plaintiff to a third person, the courts have required that there be a specific request therefor from the defendant: "[C]ompensation for a party's performance should be paid by the person whose request induced the performance." (*Earhart v. William Low Co.* (1979) 25 Cal.3d 503, 515 [158 Cal.Rptr. 887, 600 P.2d 1344]; see also *Palmer v. Gregg, supra,* 65 Cal.2d at p. 661, fn.1.)

■ As the superior court found in this case, the record is devoid of any evidence which can fairly be characterized as creating a disputed issue of material fact as to *either* the bestowal of any benefit on Alta Bates by Day *or* any explicit or implicit request by it for Day's services in the *Jackson* action. The first point seems almost too obvious for words: Day's suit on behalf of Jackson did not make it past the liability phase. Inasmuch as it never reached the damages phase, Alta Bates got nothing by virtue of either its lien or anything Day did in the *Jackson* action.

Regarding the requirement of a "request," there is clearly nothing explicit in the record. Day contends, however, that the record reflects that Alta Bates "was making direct and/or implied demands for legal services, participated in the proceedings, knew that DAY was rendering services for its benefit, and accepted the services without any objection." This contention appears to rest on the premise that, by not rejecting his purported "representation" of it, Alta Bates acquiesced therein. We are not persuaded.

The record contains only two communications from Alta Bates's agent, Hoffman, to Day. One is the form letter accompanying a copy of the notice of lien and sent to Day on May 16, 1996. It says nothing that could remotely be construed as a request for services. Indeed, it starts out with the words:

"This office represents ALTA BATES MEDICAL CENTER/HERRICK HOSPITAL who provided hospital services to your client in conjunction with injuries sustained . . . ." And it continues in a vein which can only be interpreted as mildly adversarial, e.g., reminding Day that "you may have liability if you have disbursed settlement funds without satisfying my client's bill for hospital services," and concluding by stating that "[I]n order to protect our client's interest, we will takes [sic] whatever additional action is appropriate to enforce our client's claim."

The only other communication in the record from Alta Bates or its agent, Hoffman, to Day was, as noted earlier, a two-line June 13, 2000, e-mail message which was in response to Day's June 9, 2000, fax request for the name of a witness would could and would testify regarding the hospital's bill. That e-mail read, in its entirety: "hello. The person who will testify re the hospital's bill is Jan Herbert. You will have to let me know when you need her so I can alert her to be on call. You are correct that it is the hospital that is asserting a lien—we are just their collection agent."

Day appears to be arguing that the lack of response by Alta Bates and its agent, Hoffman, to his fax letter of June 9, 2000, and his various e-mails of the following weeks, when he thought he was on the verge of presenting Jackson's damage case, constitutes an acceptance of his services. We disagree. The vast majority of the text of these messages concerned the progress of the liability phase of the trial, when a witness for the hospital might be needed, the fact that he, Day, did not accept at all the validity of the lien and that an attorney for the hospital should be present to argue as to that, and requesting authority regarding the validity of the lien. To be sure, Day included several phrases suggesting that he was, albeit involuntarily, representing the lien claimant in some way. Thus, in one e-mail he asserted: "I can only present the evidence [of the lien] as 'damages,' and I will, as demanded, comply with my duties and present the 'lien' as damages." And in another, he wrote: "I have been forced to prosecute the case to protect the lien, and am continuing to do my obligation with respect to protecting the lien." And in a third, he noted: "I have been required to deal with the amount of the lien and present the case as if the lien was valid. . . . Please contact me asap as I will continue to represent the lien amount as damages to protect Alta Bates lien claim, although it is not of concern to my client's interest."

We reject the suggestion that Alta Bates's lack of response to these statements constitutes some sort of implied acceptance by it of Day's services. First of all, at the time he wrote them he had not yet established (and indeed never established) that anybody was liable for Jackson's injuries; query, thus, as to how his efforts at that point in any way implicated

Alta Bates's claim. Second, these various statements are buried in messages principally concerned with the progress of the liability phase of the trial, Day's challenge to the validity of the lien, the presence and preparation of a witness for the hospital, etc. Third, to the extent that they constitute representations by Day that he was then acting as an attorney representing Alta Bates's interest and doing so at its insistence, they are self-serving in the extreme. Alta Bates's silence in the face of such statements can in no way constitute acquiescence in any purported "representation" by Day of its interests.

## B.

Second, a recent California Supreme Court case establishes that, in a similar context, a county hospital filing a lien in a personal injury action is not required to have its lien claim reduced by an amount attributable to attorney fees generated by the tort plaintiff's attorneys. That decision, *City and County of San Francisco v. Sweet* (1995) 12 Cal.4th 105 [48 Cal.Rptr.2d 42, 906 P.2d 1196] (*Sweet*), concerned litigation in which the plaintiff, Sweet, had been injured in an automobile accident and was subsequently treated in two San Francisco public hospitals at a cost of over $35,000 to the county. Sweet subsequently filed a tort action against the driver of the car which had struck him, an action which subsequently settled for over $100,000 after deducting attorney fees and costs. The City and County of San Francisco had, however, filed a hospital lien for the costs of its care of Sweet under Government Code section 23004.1 (section 23004.1), a provision giving "a county a first lien for the cost of medical care it has provided to an injured person against any judgment that person recovers from a third person who is responsible for the injury." (*Sweet*, at p. 108.)

Sweet's attorney asked the county to reduce its lien, but the latter declined to do so. The attorney then set aside $22,000 for Sweet's net recovery to satisfy the lien, contending that the reduction was consistent with "what he believed to be the county's proportionate share of attorney fees incurred in creating the 'fund' from which the county sought to recover its expenses." (*Sweet, supra,* 12 Cal.4th at p. 109.) The county did not accept this amount and initiated an action against both Sweet and his attorney to recover the full amount of its lien. Both the trial court and another division of this court agreed with Sweet and his attorney that "the 'common fund' doctrine, under which fairness to the actual successful litigant requires that all who benefit from the creation of the fund share the burden of its recovery [citations], was applicable." (*Ibid.*)

Our Supreme Court unanimously reversed. In so doing, it held that the common fund doctrine was simply not applicable to a lien filed under

section 23004.1, because in such a case the lien claimant is a creditor and the common fund doctrine should not be extended to claims arising in a creditor-debtor relationship. It held: "A personal injury action seeking to recover damages for injuries inflicted on the plaintiff by another is not an action taken for the benefit of the plaintiff's creditors. It is prosecuted for the benefit of the plaintiff. . . . [¶] In common fund cases the litigation has been undertaken in contemplation that a fund will be created that will confer a benefit on a class of beneficiaries with a common interest in the benefit obtained, but a personal injury tort action is undertaken for the benefit of the injured plaintiff. The plaintiff's creditors do not have an interest in the recovery in common with the plaintiff. That the creditors may benefit from any recovery is an incidental, not an intended, benefit of the litigation [Citations.]" (*Sweet, supra,* 12 Cal.4th at pp. 116-117.)

■ Day argues that *Sweet* is inapplicable to this case because that case (1) involved a conceded debtor-creditor relationship, which (he contends) was not the case here and (2) concerned a statute regulating public hospital liens, not private liens.[1] Neither argument has merit.

Day's argument that this case does not implicate the sort of creditor-debtor relationship involved in *Sweet* is based on the premise that his client, Jackson, had adequate medical insurance to cover all of Alta Bates's proper expenses of her treatment, and that any charges above and beyond that were improper and excessive and, therefore, Alta Bates was not a bona fide creditor. The answer to this is obvious: Alta Bates was asserting a lien against any recovery Jackson might achieve in her underlying tort action; to that extent, it was a putative creditor. Whether, and to what extent, any or all of its charges had been, or should have been, offset by proceeds from her medical insurance policy was something that would have been sorted out in litigation (or arbitration) ancillary to her achieving a judgment or settlement with the defendant in her tort action. But there was no such judgment or settlement and hence whether, and to what extent, Alta Bates had (or perhaps still has) a valid creditor claim against Jackson is unknown. What is known is that, as of 1996, it asserted, and in a manner expressly permitted by statute, that it *was* a creditor of Jackson. Unless and until its lien was either withdrawn or judicially found to be either satisfied or invalid, it must be assumed that Alta Bates had, at least to some extent, an unsatisfied monetary claim against Jackson. As a consequence, the principle articulated in *Sweet* clearly applies here.

---

[1]Day also notes that this argument was not advanced by Alta Bates in the superior court despite the fact that *Sweet* has been on the books since 1995. That is true, but the law is clear that we may affirm a trial court judgment on any basis presented by the record whether or not relied upon by the trial court. (See Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2001) ¶¶ 8:214 to 8:217, pp. 8-106 to 8-109 (rev. #1 2000).)

Day's second point, that *Sweet* applies only to claims against public hospitals under section 23004.1, is belied by several unmistakable references in the *Sweet* opinion itself and by subsequent authority.

In the course of discussing the legislative intent underlying section 23004.1, the *Sweet* court noted that the general rule in California regarding attorney fees is that of Code of Civil Procedure section 1021, which provides that, unless otherwise provided by contract or statute, every party to litigation must bear its own attorney fees. It then said: "In construing section 23004.1 therefore, the court does not presume that any exception to Code of Civil Procedure section 1021 applies. That being so, there is no reason to anticipate that the Legislature would expressly negate the applicability of the common fund exception in the language of section 23004.1." (*Sweet, supra,* 12 Cal.4th at p. 122.) At that point, the court dropped a footnote, which is highly instructive for present purposes. It reads: "The same is true of Civil Code section 3045.1 et seq., which governs liens for the cost of emergency and ongoing medical care provided to a person injured by accident or wrongful act. Under those provisions a lien may be placed on damages recovered or to be recovered by judgment, settlement, or compromise, if notice of the amount claimed has first been given to any person known to be liable to the injured person and to any known insurance carrier of the person liable. Civil Code section 3045.4 provides that unless the entity given notice pays to the claimant as much of the amount of the lien as can be paid out of 50 percent of the damages recovered, that entity is responsible for the full amount of the lien. There is no suggestion in the language of that section that the injured party's attorney fees be apportioned." (*Id.* at p. 122, fn. 11.)

Section 3045.1 was, of course, the statute pursuant to which Alta Bates filed the lien that is the subject of this action. We think the court's footnote 11 makes clear that the two statutes should be similarly construed and applied.

Indeed, another sister court has explicitly so held. In *Lovett v. Carrasco* (1998) 63 Cal.App.4th 48 [73 Cal.Rptr.2d 496] (*Lovett*), the Court of Appeal quoted extensively from *Sweet* in a case involving the (attempted) apportionment of attorney fees as between a tort plaintiff and a private hospital lien claimant. It had no difficulty holding that *Sweet* applies to the latter situation as well, stating: "This [i.e., the *Sweet*] analysis applies no less to a private medical provider holding a contractual lien on a personal injury tort action than to a public entity provider holding a statutory lien. In both cases the lien claimant is a creditor of the plaintiff, who pursues the action for his or her own benefit rather than the benefit of his or her creditors." (*Id.* at p. 56.) We agree.

In the course of explaining its ruling in *Sweet,* the Supreme Court cited—approvingly—several out-of-state cases involving similar facts. *Sisters of Charity of Providence of Montana v. Nichols* (1971) 157 Mont. 106 [483 P.2d 279] (*Nichols*) was, according to the court, "the first case to address the claim of an attorney that a hospital with a lien on the proceeds of a third party action should share in the attorney fees." (*Sweet, supra,* 12 Cal.4th at p. 118.) The Montana Supreme Court rejected that claim noting that the lien was based on a debt owed directly to the hospital. It said: "The fact that an incidental benefit was also received by the hospital from her [the patient's] attorneys' services in the form of settlement proceeds from which its bill could be paid does not, in itself, create an implied contract by the hospital to pay her attorneys for their services." (*Nichols, supra,* 483 P.2d at p. 283.)

Several years later, the Iowa Supreme Court cited *Nichols* in *Broadlawns etc. v. Estate of Major* (Iowa 1978) 271 N.W.2d 714, 717. In that decision, it held that a hospital with a lien was not responsible for a proportionate share of the attorney fees of an estate that had settled a wrongful death action. It noted that the hospital "was a stranger" to the estate's arrangement with its attorneys and, as a consequence, there was no unjust enrichment in permitting it to recover on its lien without sharing in the expense of the attorneys. (*Ibid.*)

In a similar case, *Hosp. Bd. of Directors of Lee v. McCray* (Fla.Dist.Ct.App. 1984) 456 So.2d 936, 939, a Florida appellate court succinctly summarized the relevant point: "A hospital's statutory lien may not be impaired or diminished by the amount of attorney's fees which may be due the patient's counsel."

Even more recently, in *Bashara v. Baptist Memorial Hosp. System* (Tex. 1985) 685 S.W.2d 307, 309, the Texas Supreme Court, faced with a similar claim, observed that it "cannot help but note an apparent unanimity of opinion on the subject. Beginning with the Supreme Court of Montana in *Sisters of Charity of Providence of Montana v. Nichols,* [*supra,*] 157 Mont. 106, 483 P.2d 279, a succession of recent decisions by unanimous courts have rejected claims by plaintiffs' attorneys to compensation from the corpus of a hospital lien. [Citations.]"

Finally, it is worth stressing again that each of these out-of-state cases was cited approvingly by our Supreme Court in *Sweet.* (*Sweet, supra,* 12 Cal.4th at pp. 117-119.)

In sum on this point, over and above the reasons articulated by the superior court for granting Alta Bates's motion for summary judgment,

Day's action against that hospital for a portion of the attorney fees and costs he incurred in the *Jackson* action is barred by the holdings of *Sweet* and *Lovett.*

## IV. DISPOSITION

The judgment is affirmed.

Kline, P. J., and Lambden, J., concurred.