Filed 4/25/13  Lock v. Cunnyngham CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| HELEN LOCK, as Administrator, etc.,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>DAVID CUNNYNGHAM et al.,<br><br>    Defendants and Respondents. | D062047<br><br><br>(Super. Ct. No.<br>37-2010-00151262-PR-LS-CTL) |


APPEAL from a judgment of the Superior Court of San Diego County, Jay M. Bloom and Jeffrey S. Bostwick, Judges.  Affirmed as modified.


Helen Lock, administrator with will annexed of the estate of decedent Robert Clifford Reed, appeals a judgment enforcing a settlement agreement with claimants David Cunnyngham, Kristy Fyffe, Amy Austin, and Mirna Cunnyngham (together Claimants).  On appeal, Lock primarily contends the evidence is insufficient to support the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

On April 4, 2010, Reed died testate. Lock was appointed as administrator of his estate. After Lock rejected Claimants' claims against the estate, they filed a wrongful death action against the estate based on Reed's murder of Mitch and Diane Cunnyngham. In December 2010, the parties entered into a pretrial settlement agreement in the wrongful death action that required Lock to convey to Claimants all estate assets after payment of court-approved administrative expenses. On March 2, 2011, a judgment was entered reflecting the terms of that settlement agreement.[1]

On June 2, 2011, Lock filed her first and final account and report of administrator and petition for settlement, final distribution of insolvent estate and reserve, and statutory compensation to attorney and administrator (Final Account). Lock alleged the estate was in a condition to be closed. She alleged "[t]here are no known taxes due but unpaid, no known notes payable, no known judgment for which the estate is liable, or any other material liability."[2] She further alleged she had no reason to believe any public entity (other than the Director of Health Services) had any basis for making a claim against the estate. She alleged the estate currently had assets with a total value of $1,126,352.37.

---

[1]     That judgment provided in pertinent part: "[Lock] shall convey to [Claimants] the entirety of the Estate of Robert Clifford Reed, less only those amounts approved by the Probate Court for the administration of the Estate of Robert Clifford Reed and the defense of this action. This judgment is payable out of property in the Estate of Robert Clifford Reed in the course of administration."

[2]     She further alleged: "No income taxes are due or payable by the Estate at this time."

2

She requested the probate court order that the estate be closed, approve the Final Account, and authorize her to distribute the estate's real property (valued at $365,000) to Claimants and distribute its cash on hand (approximately $757,852.37) to her for statutory administrator's fees ($25,197.89), her probate counsel ($25,197.89 for statutory attorney fees and $8,527.50 for extraordinary attorney fees), her litigation counsel ($68,441.68), Arlette Reed ($1,585.00 for funeral expenses), and Claimants' counsel for deposit in the client trust account ($623,902.41).[3] She requested that she be allowed to keep a reserve of $5,000 for any additional expenses until the distributions of property were complete and then any remaining funds would be distributed to Claimants' counsel.

Claimants objected to the Final Account. In general, they asserted that the proposed payments to Lock, her probate counsel, and her litigation counsel, as well as to certain other individuals, were excessive and should be reduced. Claimants asked the probate court to order the immediate distribution of all estate assets, except for the amounts they contested.

On July 22, 2011, the probate court issued an order approving the Final Account for the most part, ordering distribution of real property to Claimants, cash to Claimants' counsel, and $25,197.89 as statutory attorney fees for Lock's probate counsel, except for a $155,000 reserve to be held back until the remaining issues were resolved. The probate court also ordered Lock, Claimants, and their counsel to participate in a mandatory

---

[3]     Lock's litigation counsel had previously been paid $38,970.00.

3

settlement conference with San Diego County Superior Court Judge Jay M. Bloom. The court also set a date for a contested hearing on the remaining issues.

On August 12, 2011, following settlement negotiations, the parties signed a settlement agreement and Judge Bloom read into the record the terms of that settlement agreement. Judge Bloom stated:

> "I'll indicate I've met with the parties, and we've reached a settlement. . . . [¶] It is as follows: $63,500 is to be released from the estate reserve of [$]155,000 for all attorney and administrative fees. The balance of the reserve, which is [$]91,500, is to go to [C]laimants. Claimants hereby agree to waive all objections. And Judge Bloom is to keep jurisdiction to enforce the settlement."

Lock confirmed on the record that she understood the settlement was binding and agreed to that settlement. Lock's probate and litigation counsel and Claimants also individually confirmed their agreement to that settlement.

On August 29, the parties presented the settlement agreement to the probate court. The settlement agreement stated:

> "The court will receive into the record the settlement . . . embodied in the transcript [dated] August 12, 2011, regarding the sums that were withheld from disbursement by prior court order for resolution of issues as to the distribution of that money, which is a sum of $155,000.
>
> "The parties have reached an agreement with the assistance of the court, Judge Bloom specifically, that of the $155,000, which I'll call the reserve, $91,500 is to go to the Claimants. The balance of that reserve, that is the difference between $91,500 and $155,000, will be disbursed to [Lock] for her statutory fees, and [her litigation counsel]."

Nevertheless, the court stated its preference that a written order be drafted for its signature.

4

However, at a subsequent hearing, Lock's counsel expressed his belief that under the settlement agreement Claimants were not entitled to a sum certain of $91,500, but only whatever amount was "left over" after payment of the estate's administration costs and expenses. Because of the parties' disagreement regarding the terms of the settlement agreement, the probate court did not sign the draft written order.

Claimants thereafter filed a motion to enforce the settlement agreement pursuant to Code of Civil Procedure section 664.6.[4] They argued the settlement agreement required Reed's estate to pay them $91,500. Lock opposed the motion. She argued that because the parties did not know at the time of the settlement that the estate had substantial income tax liabilities, the settlement should be interpreted as allowing her to pay all administrative costs and expenses and income taxes before any amounts would be paid to Claimants.

On March 2, 2012, after hearing counsel's arguments, Judge Bloom granted Claimants' motion to enforce the settlement agreement. On March 22, he entered a judgment after settlement in Claimants' favor. Lock timely filed a notice of appeal.

---

4    All statutory references are to the Code of Civil Procedure unless otherwise specified.

5

DISCUSSION

I

*Standard of Review*

"Section 664.6 permits a court to enter judgment pursuant to the terms of a settlement if the parties stipulate orally before the court or in writing to settle all or part of a case." (*Skulnick v. Roberts Express, Inc.* (1992) 2 Cal.App.4th 884, 889 (*Skulnick*).) Section 664.6 provides in pertinent part: "If parties to pending litigation stipulate . . . orally before the [court] for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement."

"A trial court, when ruling on a section 664.6 motion, acts as a trier of fact." (*Skulnick*, *supra*, 2 Cal.App.4th at p. 889.) The court "must determine whether the parties entered into a valid and binding settlement." (*Kohn v. Jaymar-Ruby, Inc.* (1994) 23 Cal.App.4th 1530, 1533.) Section 664.6's "express authorization for trial courts to determine whether a settlement has occurred is an implicit authorization for the trial court to interpret the terms and conditions to settlement." (*Fiore v. Alvord* (1985) 182 Cal.App.3d 561, 566.) "[I]n ruling upon a section 664.6 motion for entry of judgment enforcing a settlement agreement, and in determining whether the parties entered into a binding settlement of all or part of a case, a trial court should consider whether (1) the material terms of the settlement were explicitly defined, (2) the supervising judicial officer questioned the parties regarding their understanding of those terms, and (3) the parties expressly acknowledged their understanding of and agreement to be bound by those terms. In making the foregoing determination, the trial court may consider

6

declarations of the parties and their counsel, any transcript of the stipulation orally presented and recorded by a certified reporter, and any additional oral testimony." (*In re Marriage of Assemi* (1994) 7 Cal.4th 896, 911.) Furthermore, "[i]f the same judge presides over both the settlement and the section 664.6 hearing, he may avail himself of the benefit of his own recollection." (*Kohn*, at p. 1533.)

On appeal, an appellate court must determine whether there is substantial evidence to support the trial court's section 664.6 determination. (*In re Marriage of Assemi*, *supra*, 7 Cal.4th at p. 911; *Kohn v. Jaymar-Ruby, Inc.*, *supra*, 23 Cal.App.4th at p. 1533; *Skulnick*, *supra*, 2 Cal.App.4th at p. 889; *Fiore v. Alvord*, *supra*, 182 Cal.App.3d at p. 565.) When an appellant asserts the evidence is insufficient to support a factual finding, we apply the substantial evidence standard of review, requiring two steps. "First, one must resolve all explicit conflicts in the evidence in favor of the respondent and presume in favor of the judgment all *reasonable* inferences. [Citation.] Second, one must determine whether the evidence thus marshaled is substantial. While it is commonly stated that our 'power' begins and ends with a determination that there is substantial evidence [citation], this does not mean we must blindly seize any evidence in support of the respondent in order to affirm the judgment. . . . [Citation.] '[I]f the word "substantial" [is to mean] anything at all, it clearly implies that such evidence must be of ponderable legal significance. Obviously the word cannot be deemed synonymous with "any" evidence. It must be reasonable . . . , credible, and of solid value . . . .' [Citation.] The ultimate determination is whether a *reasonable* trier of fact could have found for the respondent based on the *whole* record." (*Kuhn v. Department of General Services* (1994)

22 Cal.App.4th 1627, 1632-1633, fns. omitted.) "[T]he power of an appellate court *begins* and *ends* with the determination as to whether, *on the entire record*, there is substantial evidence, contradicted or uncontradicted, which will support the determination, and when two or more inferences can reasonably be deduced from the facts, a reviewing court is without power to substitute its deductions for those of the trial court. *If such substantial evidence be found, it is of no consequence that the trial court believing other evidence, or drawing other reasonable inferences, might have reached a contrary conclusion.*" (*Bowers v. Bernards* (1984) 150 Cal.App.3d 870, 873-874.)

II

*Substantial Evidence to Support the Section 664.6 Judgment*

Lock contends the evidence is insufficient to support the judgment enforcing the settlement pursuant to section 664.6.

A

On August 12, 2011, following settlement negotiations, the trial court (Judge Bloom) read into the record the parties' settlement agreement, stating: "$63,500 is to be released from the estate reserve of [$]155,000 for all attorney and administrative fees. The balance of the reserve, which is [$]91,500, is to go to [C]laimants. Claimants hereby agree to waive all objections." All of the parties, including Lock, confirmed their agreement to that settlement.

In subsequently moving to enforce that settlement agreement, Claimants argued the settlement agreement required Reed's estate to pay them $91,500. Lock opposed that motion and argued that because the parties did not know the estate had substantial income

8

tax liabilities, she should be able to pay $63,500 for her administrator's fees and attorney fees, as well as all tax liabilities and other administrative costs and expenses, before Claimants would be entitled to any part of the $91,500 stated amount. In so arguing, Lock cited Probate Code section 11420, which provides for the order of payment of an estate's debts. She argued Probate Code section 11420 first required payment of state and federal taxes and then payment of administrative costs and expenses before any general debts (e.g., Claimants' claims) are paid. She argued that because the parties were mistaken as to the amount of taxes the estate owed, the settlement agreement should be interpreted as allowing payment of all taxes and $63,500 in administrative costs and expenses before Claimants would be paid anything.

At the March 2, 2012, hearing on Claimants' motion to enforce the settlement, Lock argued the settlement was "silent as far as if any taxes were due or payable." The trial court replied: "I think we discussed this in chambers. And didn't I say, as I usually do, that, you know, 'Taxes are up to you. I make no representation on taxes. And you bear the risk on that'? Didn't we discuss that?" Lock's counsel conceded that they "might have discussed that at the secondary" settlement negotiations, but not at the time of the first settlement agreement. The court stated:

> "Well, I think I remember you mentioning, and I may be wrong, that something -- you thought there might be [$]15,000 or something like that. And I said, you know, 'I can't be responsible for taxes. You bear the risk.' And you sort of said, 'Understood.' Sort of something to that effect."

Claimants' counsel agreed with the trial court's recollection regarding the discussion of taxes at the time of the settlement negotiations. He stated: "Because it [taxes] came up in

9

a follow-up, more detailed discussion at the second hearing after going to Judge Bostwick [i.e., the probate judge].  And Judge Bostwick sent this back here.  That was after [Lock's counsel] claims he learned for the first time we may be talking about more than $5,000 -- the amount that was put in the record on the verified [Final Account] by Ms. Lock.  She verified that they only wanted a $5,000 reserve for all remaining issues, including taxes.  And they used the term[] 'expenses' to include taxes.  And [Lock's counsel] said on the record, 'I doubt there'd be any more.  If anything, a maximum [of] $5,000 in taxes.' "  Lock's counsel disagreed that taxes were discussed at the first settlement negotiations.

Claimants' counsel argued that Claimants' waiver of objections to the administrative costs and expenses pursuant to the settlement agreement "was conditioned upon the payment of $91,500, a sum certain."  He argued the purpose of the settlement agreement "was to get finality and certainty for the [C]laimants and everybody else involved."  He stated there was no evidence presented to the court regarding the amount of taxes owed by the estate.  He argued the court should reject Lock's attempt to modify the settlement agreement based on her unilateral mistake regarding the amount of taxes owed by the estate.

The trial court (Judge Bloom) issued a minute order granting Claimants' motion to enforce the settlement agreement.  The court stated:

> "The written and executed settlement instrument (Exhibit A) states that the amount of $63,500 was to be used 'for all remaining and requested [administrative] fees & costs; i.e., *no further admin*[*istrative*] *expenses*.  $91,500 Balance of $155,000 reserve to [C]laimants.  (underscore in original) (italics added).

10

"Here, [Lock] argues that because she was not aware, at the time of entering into the settlement, that if the Estate would incur additional tax liability when the assets of the Estate were liquidated, the court should allow her, in essence, to deduct the additional tax liability from the Estate before relinquishing the balance over to the moving parties, the Claimants herein. This interpretation of the settlement would result in a significant reduction in the express settlement amount of $91,500.

"The settlement, however, is clear that 'no further admin expenses' were to be factored in the settlement equation. (emphasis added) Therefore, if a mistake was made in the amount of the administration expenses incurred by the Estate (which includes tax liabilities), there is no basis upon which to shift the burden of the added expense to Claimants. Indeed, as [Lock] was in a position to ascertain what the administration expenses and taxes would be in light of the nature of the assets in the Estate and thus, any mistake made respecting that amount appears to have been a unilateral mistake on her part. As such, it cannot, as a matter of law, be relied upon to modify the terms of the settlement.

"[Lock] argues that administrative fees technically do not include taxes. Thus, the agreement did not include taxes. However, the essence of the agreement was that [C]laimants were to get $91,500.00 and the estate could do [whatever] it wanted with the balance. In addition, the spirit of the agreement was that whatever money was left with the administrator would cover all remaining debts of the estate administrative fees, taxes, etc.

"Finally, it must be noted that Lock has not provided the Court with any actual evidence as to the amount of taxes owed."

Accordingly, the court granted Claimants' section 664.6 motion.

On March 22, 2012, the court (Judge Bloom) entered a judgment after settlement

for Claimants, stating:

"Of the $155,000 reserve set aside by the Estate pursuant to the Order Approving First and Final Account signed by [the probate judge] and filed on July 22, 2011, $63,500 shall be used by the Estate for all remaining and requested administrative fees and costs. The amount of $91,500 shall be paid to Claimants, in exchange for

11

Claimants' waiver of any and all objections to the [Final Account] filed by the Estate."

B

Lock asserts the evidence is insufficient to support the judgment enforcing the settlement agreement because the circumstances show that only administrative expenses, and not taxes, were the subject of settlement negotiations. She argues the parties' negotiations involved Claimants' objections to the Final Account, which objections involved only administrative expenses (i.e., the proposed fees to be paid to her and her probate and litigation counsel) and not the estate's tax liabilities. Because the settlement agreement did not involve the estate's tax liabilities, she argues the agreement should be interpreted as allowing her to pay the estate's taxes and $63,500 in administrative expenses before Claimants are paid any part of the stated $91,500 amount.

We conclude there is substantial evidence to support the judgment enforcing the settlement agreement. The trial court (Judge Bloom) conducted the settlement negotiations and presumably witnessed what it and the parties stated during those negotiations. At the hearing on Claimants' motion to enforce the settlement agreement, the court expressed its recollection that the estate's tax liabilities were, in fact, discussed during the settlement negotiations. Claimants' counsel agreed with the court's recollection and stated Lock had used the term "expenses" to include taxes. Accordingly, there is substantial evidence to support the court's implicit finding that taxes were

12

discussed during settlement negotiations and that, in particular, the term "expenses," as used in the settlement agreement, included the estate's tax liabilities.[5]

Lock argues there is evidence that would support a contrary finding (i.e., that taxes were not included in the administrative expenses that were the subject of the settlement agreement). She argues that because the probate judge ordered the parties to participate in a mandatory settlement conference regarding Claimants' objections to the Final Account, which objections concerned payment of her fees, the fees of her probate and litigation counsel, and other administrative expenses, it must be inferred that the settlement negotiations involved only administrative expenses and not the estate's tax liabilities. She further argues that because the settlement agreement signed by the parties did not mention taxes, it is clear the settlement could not have provided Claimants were to be paid $91,500 before the estate paid its taxes. Lock also notes that after the trial court read the settlement agreement into the record, her probate counsel stated it was his understanding that the $63,500 amount for the estate's administrative expenses provided for in the settlement agreement was to go to the payment of Lock's fees, his fees, and the fees of her litigation counsel. She notes Claimants' counsel replied, "[t]hey can do

---

5      Assuming arguendo taxes were not considered part of administrative expenses, we nevertheless would conclude there is substantial evidence to support the trial court's finding that the settlement agreement required the payment of $91,500 to Claimants. We have reviewed the settlement agreement signed by all the parties. Based on that evidence, we conclude the trial court could reasonably find the parties agreed that Claimants would be paid $91,500 regardless of any tax liabilities of the estate. Furthermore, the court reasonably concluded any mistake regarding the amount of taxes owed by the estate was a unilateral mistake by Lock and did not provide a basis for modification of the settlement agreement.

13

whatever they want with that money." Based on that evidence, Lock asserts the parties understood that the term "administrative expenses" did not include the estate's tax liabilities.

In so arguing, Lock misconstrues and/or misapplies the substantial evidence standard of review. Assuming arguendo there may have been evidence in the record to support a finding by the trial court that the parties did not intend to include taxes within the term "administrative expenses," the substantial evidence standard of review requires us instead to review the record for evidence to support the court's finding and, in so doing, make all reasonable inferences from the evidence favorable to that finding. It is not our function to reweigh the evidence or to make inferences contrary to those made by the trial court. Because that is what Lock, in effect, asks us to do, she has not carried her burden on appeal to show the evidence is insufficient to support the judgment. (*Kuhn v. Department of General Services*, *supra*, 22 Cal.App.4th at pp. 1632-1633; *Bowers v. Bernards*, *supra*, 150 Cal.App.3d at pp. 873-874.)

Lock alternatively argues the trial court erred in interpreting the settlement agreement because the Probate Code defines an estate's "administrative expenses" as excluding taxes and requires payment of taxes and administrative expenses before payment of other claims against the estate. Probate Code section 11401 defines a "debt" of an estate as including: (a) a claim payable in the course of administration; (b) an expense of administration; and (c) a charge against the estate, including, but not limited to, taxes. Although, as Lock asserts, Probate Code section 11401 does not include taxes as part of an estate's administrative expenses, the trial court could nevertheless reasonably

14

infer the parties to the settlement agreement intended to include taxes and other debts of the estate within the term "administrative expenses" when they negotiated the settlement agreement. Lock does not cite any case or other authority showing the parties could not define or use that term between themselves in a manner different from its statutory definition.

Likewise, Probate Code section 11420 provides for payment of an estate's debts in a certain order of priority among classes of debts, stating in pertinent part:

> "(a) Debts shall be paid in the following order of priority among classes of debts, except that debts owed to the United States or to this state that have preference under the laws of the United States or of this state shall be given the preference required by such laws:
>
> "(1) Expenses of administration. . . . [¶] . . . [¶]
>
> "(3) Funeral expenses. [¶] . . . [¶]
>
> "(7) General debts, including judgments not secured by a lien and all other debts not included in a prior class.
>
> "(b) . . . No debt of any class may be paid until all those of prior classes are paid in full."

Assuming arguendo Probate Code section 11420 precludes the probate court from ordering the $91,500 amount to be distributed to Claimants pursuant to the settlement agreement before the estate's income tax liabilities are paid, there is no admissible evidence (e.g., affidavit) in the record showing either the amount of the estate's tax liabilities or that there are insufficient estate assets to pay both those tax liabilities and Claimants' $91,500 amount. Lock has not carried her burden on appeal to show the trial

15

court erred in interpreting the settlement agreement as requiring the payment of $91,500 to Claimants.[6]

III

*Request for Modification of Judgment*

Lock requests that, in the event the judgment is affirmed, we modify it to provide that the $91,500 amount be paid to Claimants "in the course of administration" as required by Probate Code section 9301. Claimants apparently do not oppose that request.

Probate Code section 9300 generally provides that a money judgment against a decedent or his or her personal representative or estate shall be paid in the course of administration of the estate and is not directly enforceable against the estate's property. Probate Code section 9301 provides that a money judgment against a personal representative "shall provide that it is payable out of property in the decedent's estate in the course of administration." Because the judgment enforcing the settlement agreement in this case omitted that required language, it must be modified to comply with Probate Code section 9301's mandate. (*Mattes v. Pinkney* (1968) 260 Cal.App.2d 491, 495-496; *Fogarty v. McGuire* (1959) 170 Cal.App.2d 405, 412; *Harris v. Security Trust & Sav. Bank* (1954) 122 Cal.App.2d 512, 515; *Estate of Isenberg* (1944) 63 Cal.App.2d 214,

---

6 In the event the probate court determines there are insufficient estate assets to pay both the estate's tax liabilities and Claimants' $91,500, the appropriate remedy for the deficiency will be a matter for the probate court to determine in the first instance. It is not a matter for us to decide in this appeal.

16

218-219; *Clark v. Smith* (1933) 217 Cal. 749, 753; *Nathan v. Dierssen* (1913) 164 Cal. 607, 612; *Moore v. Russell* (1901) 133 Cal. 297, 301.)

IV

*Claimants' Request for Sanctions*

Claimants request that we award them their attorney fees and costs as a sanction against Lock for filing a frivolous appeal. We decline to impose sanctions against Lock in the circumstances of this appeal. Nevertheless, because we believe Claimants should recover their costs on appeal, we award them those costs.

DISPOSITION

The second sentence on the second page of the judgment is modified to read as follows: "The amount of $91,500 shall be paid to Claimants, in exchange for Claimants' waiver of any and all objections to the First and Final Accounting filed by the Estate, which amount shall be payable out of property in the decedent's estate in the course of administration." As so modified, the judgment is affirmed. Claimants shall recover their costs on appeal.

McDONALD, J.

WE CONCUR:

HALLER, Acting P. J.

O'ROURKE, J.

17