Filed 12/31/24

**CERTIFIED FOR PUBLICATION**

APPELLATE DIVISION OF THE SUPERIOR COURT

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

| | |
|---|---|
| JONATHAN NISSANOFF,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>UNITEDHEALTHCARE INSURANCE COMPANY,<br><br>    Defendant and Respondent. | 23APLC00143<br><br>Spring Street Trial Court<br><br>No. 22STLC08599<br><br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mark E. Windham, Judge.  Affirmed.

Jonathan Nissanoff, in pro. per., for Plaintiff and Appellant.

CROWELL & MORING, Jennifer S. Romano and Andrew Holmer for Defendant and Respondent.

Plaintiff and appellant, Jonathan Nissanoff, challenges the trial court's ruling sustaining the demurrer filed by defendant and respondent, UnitedHealthcare Insurance Company ("UHC") without leave to amend.

\*            \*            \*

*First Amended Complaint*

On December 27, 2022, plaintiff, a surgeon and an assignee of his medical corporation, Advance Orthopedic Center ("AOC"), brought this action against defendant UHC for quantum meruit and breach of implied contract. On February 10, 2023, defendant demurred to the complaint. On February 14, 2023, plaintiff filed the first amended complaint, the operative complaint for the purposes of this appeal, alleging the following causes of action: (1) quantum meruit, (2) breach of implied contract, (3) breach of oral contract, (4) breach of implied covenant of good faith and fair dealing, (5) unjust enrichment, (6) declaratory relief, (7) recovery of payment for services rendered, and (8) interference with prospective economic advantage.

Plaintiff alleged the following facts. Plaintiff and AOC provide emergent medical care to members, subscribers and insureds of defendant, through their physicians. Defendant is licensed to and does business as a health care plan insurer and/or medical health plan administrator. Defendant is regulated by the Department of Managed Health Care ("DMHC") and/or the California Department of Insurance ("CDI").

Between November 2020 and November 2021, AOC's physicians provided legally required emergency medical or post-stabilization care services to patients who were enrolled in health policies insured, underwritten or administered by defendant. The physicians "billed usual, customary and reasonable charges for the care." The physicians determined their rates based on the DMHC regulations, which provide a methodology to define the amount health care service plans like UHC are to pay out-of-network providers, such as AOC.

Defendant paid for these services in amounts that were less than the physicians' usual, customary or reasonable rate and were less than the physicians' billed charges. The rates at which defendant reimbursed plaintiff were arbitrary, capricious and inexplicable, and were based on flawed databases manipulated by defendant to underpay out-of-network providers.

---

[1] Plaintiff elected to proceed via Proposed Statement on Appeal, which the trial court certified. However, "[i]n accordance with our standard of review, our factual summary assumes the truth of the operative complaint's properly pleaded factual allegations [citation] and matters that have been judicially noticed [citation]." (*Aghaian v. Minassian* (2020) 59 Cal.App.5th 447, 451, fn. 2.)

***Demurrer to First Amended Complaint***

On April 17, 2023, defendant filed a demurrer to the entire first amended complaint on the grounds that each cause of action was based on erroneous application of the Knox-Keene Act, which "only applies to 'health care service plans[.]'" UHC is an insurer licensed and regulated by the CDI, not a health care service plan, which would be regulated by the DMHC.

Defendant contended that it cannot be regulated by the DMHC because it is regulated by the CDI, and cited *Smith v. PacifiCare Behavioral Health of California, Inc.* (2001) 93 Cal.App.4th 139, 159 for the proposition that the Court of Appeal has "'recognized that the legislature has elected to subject insurers and health care service plans to distinct regulatory regimes. Insurers are regulated by the Insurance Code and the Insurance Commissioner. Health care service plans fall under the jurisdiction of the Department of Managed Care and the Knox-Keene Act.'" (*Ibid.*, italics omitted.) Therefore, if UHC is regulated by the CDI, it cannot be regulated by the DMHC and the Knox-Keene Act.

Defendant demurred to the equitable causes of action on the grounds that there were no allegations the medical services rendered by plaintiff's physicians were at defendant's request or for its benefit.

On April 24, 2023, plaintiff filed an opposition. On May 10, 2023, defendant filed a reply.

***Hearing on Demurrer and Trial Court's Order Sustaining the Demurrer***

A hearing on the demurrer was held on May 17, 2023. After oral argument, the court ruled. The court first addressed the requests for judicial notice made by both parties.

Judicially Noticed Documents[2]

Defendant requested that the trial court take judicial notice of the following documents: (1) Certificate of Authority issued by the CDI to defendant, which bears Department of Insurance certificate number 08775 and is dated April 28, 2012; (2) a PDF printout from the

---

[2]We "may also take into account matters that may be judicially noticed. [Citation.]" (*Williams v. Housing Auth. of L.A.* (2004) 121 Cal.App.4th 708, 714, fn. 6, citing *Four Star Electric, Inc. v. F & H Construction* (1992) 7 Cal.App.4th 1375, 1379 ["'a complaint may be read as if it included matters judicially noticed. [Citations.] Such matters may show the complaint fails to state a cause of action though its bare allegations do not disclose the defect'"].)

CDI showing the CDI's Company Profile of UHC[3]; (3) a PDF printout from the California DMHC public website showing the portion of DMHC's California Department of Managed Healthcare Plan Directory alphabetically listing all DMHC-licensed health care services plans with names beginning "Sequoia Health Plan, Inc." through "Western Health Advantage," available at https://wpso.dmhc.ca.gov/Dashboard/SearchHealthPlan.aspx; and (4) the portion of the DMHC's website shown in Exhibit C and publicly available at https://wpso.dmhc.ca.gov/Dashboard/SearchHealthPlan.aspx.  The court granted the aforementioned requests pursuant to section 452, subdivision (d) of the Evidence Code.

The trial court denied plaintiff's request for judicial notice of multiple unpublished decisions and prior rulings against defendant in support of plaintiff's position that defendant is regulated by the DMHC.  Defendant's supplemental request for judicial notice of rulings in unpublished cases was likewise denied.  In support of its ruling, the trial court cited *In re Bush* (2008) 161 Cal.App.4th 133, 146, fn. 5 and California Rules of Court, rule 8.1115(b)(1) for the proposition that judicial notice of unpublished decisions is only permitted when "'relevant under the doctrine[s] of law of the case, res judicata or collateral estoppel.'"

The Court's Ruling on the Demurrer to the First Amended Complaint

Acknowledging defendant's submission of UHC's "certificate of authority[] issued by the CDI" and "DMHC's directory of all licensed Knox-Keene health care service plans, which does not include the name Unitedhealthcare Insurance Company," both of which had been judicially noticed, the trial court noted that plaintiff did not address either document or explain how they did not prove UHC is regulated by the CDI and not by DMHC.  The court also noted that plaintiff did not allege that UHC is designated as an HMO or only sells health insurance, either of which designation would subject it to regulation by the DMHC.

In response to plaintiff's assertion that whether UHC is a health care service provider is a question of fact that cannot be resolved on demurrer, the court observed that plaintiff was "required to plead the facts that support [its] contention that [d]efendant is a health care service provider regulated by the DMHC because that is the basis for all the causes of action. . . .  On

_____

[3]The website link is no longer available.

4

demurrer, the [c]ourt cannot accept as true the conclusory allegation that defendant is a healthcare services provider regulated by the DMHC."

In response to plaintiff's contention that defendant was collaterally estopped from arguing it is not a health care service provider because the issue had been resolved in an earlier small claims action against it, the court noted that a "small[] claims judgment against a defendant, however, does not have collateral estoppel effect in any subsequent superior court action brought by the plaintiff regarding the same issue." Citing *ERA-Trotter Girouard Association v. Superior Court* (1996) 50 Cal.App.4th 1851, 1856, the trial court ruled that UHC was not barred from arguing that it is not a health care service plan in this action. Accordingly, the trial court sustained the demurrer to the entire first amended complaint.

In addressing the equitable causes of action at issue in this appeal, the trial court ruled that as plaintiff based his expectation for reimbursement on the theory of obligation pursuant to the Knox-Keene Act for both quantum meruit and breach of implied-in-law contract, and because he failed to allege all elements required for relief under the quantum meruit theory, the demurrer should be sustained.[4]

<u>Leave to Amend</u>

Citing *Goodman v. Kennedy* (1976) 18 Cal.3d 335, 348, the trial court denied leave to amend because "[p]laintiff's opposition does not show how the [f]irst [a]mended [c]omplaint, which relies entirely on the Knox-Keene Act and DMHC's regulations, can be amended to state cause of action against [defendant]." Defendant's demurrer to the first amended complaint was sustained in its entirety without leave to amend. The first amended complaint was dismissed with prejudice and a judgment of dismissal was entered by the court.

---

[4]As plaintiff does not challenge the trial court's rulings as to the following equitable causes of action: breach of oral contract, breach of implied covenant of good faith and fair dealing, unjust enrichment, declaratory relief, recovery of payment for services rendered, and interference with prospective economic advantage, we decline to give a detailed explanation of the trial court's reasoning as it relates to those issues.

**DISCUSSION**

*Standard of Review on Demurrer*

We review de novo an order sustaining a demurrer without leave to amend. (*Centinela Freeman Emergency Medical Associates v. Health Net of Cal., Inc.* (2016) 1 Cal.5th 994, 1010; *Morales v. 22nd Dist. Agricultural Assn.* (2016) 1 Cal.App.5th 504, 537.) We accept the truth of material facts properly pleaded in the operative complaint, "'"but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed." [Citation.]'" (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6.) On demurrer, "a complaint may be read as if it included matters judicially noticed. [Citations.] Such matters may show the complaint fails to state a cause of action though its bare allegations do not disclose the defect. [Citation.]" (*Lazzarone v. Bank of America* (1986) 181 Cal.App.3d 581, 590; see also Code Civ. Proc., § 430.30, subd. (a).)

*Applicability of Knox-Keene Act*

Plaintiff argues that because UHC clearly meets all the statutory requirements to be a health service plan as defined by the Knox-Keene Act, the trial court's determination that it was not subject to the provisions of Knox-Keene was erroneous and should be reversed. In support of his position, plaintiff argues that judicial notice should be taken of "various cases" "throughout Los Angeles County" where "UHC has tried to hide behind the [CDI]."

Requests for Judicial Notice

To the extent plaintiff attempts to resurrect his argument that unpublished superior court decisions and rulings in unrelated proceedings are judicially noticeable, we reject the claim. It is well-settled that "a written trial court ruling has no precedential value." (*Bolanos v. Super. Ct.* (2008) 169 Cal.App.4th 744, 761 [denying petitioner's request for judicial notice of a minute order issued by a trial court in an unrelated case and finding the request improper].) The statutory exception for situations where the unpublished decision is "'relevant under the doctrines of law of the case, res judicata or collateral estoppel'" is inapplicable in this instance. (See Cal. Rules of Court, rule 8.1115(b)(1); see also *ERA-Trotter Girouard Assoc. v. Super. Ct.*, *supra*, 50 Cal.App.4th at p. 1856 [refusing to accord collateral estoppel effect to issues

6

decided against defendants is consistent with the policy of fostering "speedy and final" adjudication in small claims matters].)

Applicable Regulatory Regime

"[T]he Legislature has elected to subject insurers and health care service plans to distinct regulatory regimes." (*Smith v. PacifiCare Behavioral Health of Cal., Inc.*, *supra*, 93 Cal.App.4th at p. 159, italics omitted.) Managed health care service plans are subject to the Knox-Keene Act and regulated by the DMHC. Life and disability insurer and insurance companies are subject to the Insurance Code and regulated by the California Department of Insurance. (See *Blue Cross of Cal., Inc. v. Super. Ct.* (2009) 180 Cal.App.4th 1237, 1242.)

"The Knox–Keene Act[5] is a comprehensive system of licensing and regulation under the jurisdiction of the Department of Managed Health Care. [Citation.] Among many other things, the Act compels for-profit health care service plans to reimburse emergency health care providers for emergency services [and stabilization services] to the plans' enrollees. [Citation.] . . . [¶] Under the Department of Managed Health Care's regulations, 'reimbursement of a claim' for non-contract providers means health care service plans must pay 'the reasonable and customary value for the health care services rendered . . . .' (Cal. Code Regs., tit. 28, § 1300.71, subd. (a)(3))." (*Bell v. Blue Cross of Cal.* (2005) 131 Cal.App.4th 211, 215-216.)

"Health care service plans under the Knox-Keene Act are generally subject to the jurisdiction of the Commissioner of Corporations ([Health & Saf. Code,] § 1341), not the Insurance Commissioner. Thus, Insurance Code section 740, subdivision (g), exempts health care service plans from Department of Insurance jurisdiction. . . . Regulations concerning health care service plans are found in title 10 of the California Code of Regulations, section

---

[5]"The Knox-Keene Health Care Service Plan Act of 1975 (Knox-Keene Act), as amended, is the set of laws or statutes passed by the California state legislature providing the DMHC with the authority to regulate health care service plans. The Knox-Keene Act can be found in California Health & Safety Code, section 1340 et seq. Additionally, regulations are used by the DMHC to implement, interpret, or make specific the laws enforced by the Department. These regulations are codified under title 28 of the California Code of Regulations." (See California Department of Managed Health Care website <https://www.dmhc.ca.gov/LawsRegulations.aspx#:~:text=The%20Knox-Keene%20Act%20can,the%20California%20Code%20of%20Regulation> [as of Dec. 27, 2024].)

1300.43 et seq." (*Williams v. Cal. Physicians' Service* (1999) 72 Cal.App.4th 722, 729, italics and footnote omitted (*Williams*).)

The Legislature has made it clear that the Knox-Keene Act "shall not apply to: [¶] [entities] organized and operating pursuant to a certificate issued by the Insurance Commissioner unless the entity is directly providing the health care service through those entity-owned or contracting health facilities and providers, in which case this chapter shall apply to the insurer's plan and to the insurer." (Health & Saf. Code, § 1343, subd. (e)(1).)

Analysis

According to the operative complaint, after providing emergent medical care to patients enrolled in health policies insured, underwritten or administered by defendant, plaintiff's physicians billed defendant at rates determined based on the DMHC regulations, "which provide a methodology to define the amount healthcare service plans like UHC are to pay out-of-network providers."

The basis of defendant's demurrer is its contention that it is an insurer or insurance company licensed and regulated by the CDI, not a health care service plan, which would be regulated by the DMHC. In support of its position, defendant submitted UHC's "certificate of authority issued by the CDI" and "DMHC's directory of all licensed Knox-Keene health care service plans, which does not include the name UnitedHealthcare Insurance Company," both of which were judicially noticed.

The law is clear. Managed health care service plans are subject to the Knox-Keene Act and regulated by the DMHC. Life and disability insurer and insurance companies are subject to the Insurance Code and regulated by the CDI. (See *Blue Cross of Cal., Inc. v. Super. Ct.*, *supra*, 180 Cal.App.4th at p. 1242.) Thus, the only scenario in which defendant would be subject to the jurisdiction of the Knox-Keene Act would be if it were *directly* providing the health care service through entity-owned or contracting health facilities and providers. (See Health & Saf. Code, § 1343, subd. (e)(1).) Plaintiff has made no such allegation.

Plaintiff's argument that this court should deem defendant subject to the jurisdiction of DMHC because it clearly meets all the statutory requirements to be a health service plan as defined by the Knox-Keene Act fails, as courts have previously rejected analogous rationales.

8

In *Williams*, *supra*, 72 Cal.App.4th at pages 728-729, the plaintiff sued her health care service plan when it refused to pay for unlimited physical therapy, claiming that her right to physical therapy services vested under the Insurance Code "which restricts insurers' ability to reduce benefits in disability insurance policies." (*Ibid.*, italics omitted.) The plaintiff asserted that even if the Insurance Code did not apply to her health care service plan, "since the Commissioner of Corporations is to consult with the Insurance Commissioner before adopting regulations 'to ensure the consistency of regulations applicable to these plans' (see [Health & Saf. Code] § 1342.5), there is a basis for a parallel rule." (*Id.* at p. 731, fn. omitted.) The appellate court rejected the argument. In holding that the health care service plan at issue was "not an insurance policy subject to approval by the Insurance Commissioner, but a 'health care service plan' subject to approval by the Commissioner of Corporations[,]" the court noted that the plan was exempt from the Insurance Code and fell within the jurisdiction of the Commissioner of Corporations. (*Id*. at pp. 728-729, 731.) The court also found that the provision of the Health and Safety Code requiring the Commissioner of Corporations to consult with the Insurance Commissioner before adopting regulations for health care service plans did not form a basis for the judicial creation of a rule applicable to such plans that is parallel to provisions of the Insurance Code restricting the ability of disability insurers to reduce benefits. (*Ibid.*)

While here plaintiff does not tether his request that this court deem defendant subject to the Knox-Keene Act to the existence of a provision directing the commissioners governing the respective bodies to consult as the plaintiff did in *Williams*, the rationale behind his request is essentially the same. Plaintiff petitions this court to create a rule that would either extend application of the Knox-Keene Act to insurers regulated by the CDI or to create a parallel rule that would subject insurers regulated by the CDI to regulations the Legislature specifically drafted to apply to health care service plans. As this court does not legislate, we decline to take either action. Plaintiff's "remedy properly lies '. . . in the halls of the Legislature.' [Citation.]" (*Williams*, *supra*, 72 Cal.App.4th at p. 731.)

Defendant is an insurance company and is therefore regulated by the CDI. The judicially noticed certificate of authority issued to UHC by CDI supports this conclusion, and

plaintiff has offered no evidence to the contrary. Even if there were some affiliation between defendant and UHC, as plaintiff speculates, that does not transform defendant from an insurer or insurance company into a health care service plan subject to the Knox-Keene Act. (See *Blue Cross of Cal., Inc. v. Super. Ct.*, *supra*, 180 Cal.App.4th at p. 1242; Cf. *Williams*, *supra*, 72 Cal.App.4th at pp. 728-732 [holding that the Insurance Code did not apply when plaintiff sought to challenge the conduct of her health care service plan by invoking a provision of the Insurance Code].)

Based on our determination that defendant is not subject to the Knox-Keene Act, we conclude that plaintiff's first amended complaint failed to state facts sufficient to constitute a cause of action. (*Williams v. Housing Auth. of L.A.* (2004) 121 Cal.App.4th 708, 719.) Thus, the demurrer was properly sustained as to the applicability of the Knox-Keene Act.

## *Quantum Meruit*

"[I]n order to recover under a quantum meruit theory, a plaintiff must establish *both* that he or she was acting pursuant to either an *express or implied request* for such services from the defendant *and* that the services rendered were *intended to and did benefit* the defendant. One court summarized the rule as follows: 'The theory of quasi-contractual recovery is that one party has accepted and retained a benefit with full appreciation of the facts, under circumstances making it inequitable for him to retain the benefit without payment of its reasonable value.' [Citations.]" (*Day v. Alta Bates Medical Center* (2002) 98 Cal.App.4th 243, 248 (*Day*), emphasis in original.) "[W]hen the services are rendered by the plaintiff to a third person, the courts have required that there be a specific request therefor from the defendant[.]" (*Id*. at p. 249.)

Here, plaintiff attempts to circumvent the quantum meruit requirements by arguing that "where emergency medical services or other necessaries are provided to a third party, there is no requirement that a request be made by the defendant, and a plaintiff may recover even though the physician acted without the defendant's knowledge or consent." Again citing the Knox-Keene Act and section 1371.4 of the Health and Safety Code, regulations that are not applicable to entities under the jurisdiction of the CDI, plaintiff asserts that "health plans are required to reimburse out of network providers for the usual, customary and reasonable value of

the emergency services" and that health insurers are required to cover out-of-network emergency services without the need for a prior request for authorization . . . with the same cost sharing arrangements applicable to in-network services."  Plaintiff does not allege that defendant directly requested the treatment or emergency services in question that were provided by plaintiff's physicians, nor does plaintiff assert that defendant was a direct beneficiary of the treatment or services.

Plaintiff cannot recover under a quantum meruit theory based on services rendered by the plaintiff to a third party, because there was no "specific request therefor from the defendant[.]"  (See *Day*, *supra*, 98 Cal.App.4th at p. 249.)  Moreover, plaintiff cannot demonstrate that the services rendered "were intended to and did benefit the defendant."  (*Day*, *supra*, at p. 248, italics omitted; see also *Cal. Medical Assn. v. Aetna U.S. Healthcare of Cal., Inc.* (2001) 94 Cal.App.4th 151, 174) [""""A person who, incidentally to the performance of his own duty or to the protection or the improvement of his own things, has conferred a benefit upon another, is not thereby entitled to contribution.""""].)

Plaintiff's attempts to circumvent the required standard for successful quantum meruit claims by contending that defendant must pay the usual, reasonable, and customary rate for the alleged emergency or post-stabilization services pursuant to the Knox-Keene Act also fail because as discussed *ante*, defendant is not a health care service plan governed by the Knox-Keene Act, but is instead an insurance provider or insurer properly registered with the CDI and governed by the California Insurance Code.  (See Health & Saf. Code, § 1343 subd. (e)(1).)

The trial court properly sustained the demurrer as to plaintiff's quantum meruit claim.

### *Implied-in-Law Contract*

Based on his continued reliance on the position that defendant is subject to DMHC regulations, plaintiff asserts that all the necessary bases for the implied-in-law contract are set forth in the Knox-Keene Act.  (See Health & Saf. Code, §§ 1317, subd. (a), 1317.4.)  Plaintiff also attempts to circumvent the elements of mutual assent and rate agreement required for the viability of a cause of action based on an implied-in-law contract by asserting that "Knox-Keene sets forth the 'meeting of the minds': [r]espondent was *required* under Knox-Keene to pay [usual, reasonable, and customary] rates.  While [p]laintiff's and [d]efendant's definition of

[usual, reasonable, and customary rates] may be at odds with each other, that is a triable issue of fact for determination at trial, and was not an issue that was subject to determination on demurrer."

The elements of a claim for breach of contract are "the existence of the contract, performance by the plaintiff or excuse for nonperformance, breach by the defendant and damages. [Citation.]" (*First Commercial Mortgage Co. v. Reece* (2001) 89 Cal.App.4th 731, 745.) "An implied contract is one, the existence and terms of which are manifested by conduct." (Civ. Code, § 1621.) "Agreement may be '"shown by the acts and conduct of the parties, interpreted in the light of the subject matter and of the surrounding circumstances."'" (*Foley v. Interactive Data Corp.* (1988) 47 Cal.3d 654, 681.) "[Q]uantum meruit is a theory which implies a promise to pay for services as a *matter of law for reasons of justice* [citation], while implied-in-fact contracts are predicated on actual agreements, albeit not ones expressed in words. . . ." (*Maglica v. Maglica* (1998) 66 Cal.App.4th 442, 456, fn. 14 [emphasis in original].)

Here, plaintiff maintains that a contract is implied by: (1) the Knox-Keene Act; and (2) the parties' conduct, namely that defendant authorized the treatment when plaintiff's physicians called to confirm coverage and defendant made payments towards treatment. The first argument fails because, as discussed, the Knox-Keene Act does not apply to defendant. Plaintiff does not allege facts that demonstrate the parties, even if through their conduct and not their words, reached an actual agreement that defendant would pay the usual, customary and reasonable rate. (See *Maglica v. Maglica*, *supra*, 66 Cal.App.4th at p. 456, fn. 14.) Thus, plaintiff fails to establish that an implied-in-law contract existed between the parties. As such, the trial court properly sustained the demurrer as to plaintiff's claim for breach of implied-in-law contract.

### Misjoinder of Parties

Citing no authority, plaintiff contends defendant's demurrer on grounds of misjoinder of parties should be overruled. Specifically, plaintiff asserts that "[d]efendants [*sic*] are the proper defendants [*sic*] in all of these matters," that defendant's "[d]eclarations that it is not the insurer in these matters is simply not sufficient evidence that they are not the proper [d]efendants

[*sic*][,]" "the allegations set forth in the [c]omplaint control," that as "the 'local host' of the Blue Cross Plan [*sic*]" "[d]efendants [*sic*] [are] part of the claims processing process[,]" thereby subjecting it to DMHC regulations, and that it would be "facially inequitable for [p]laintiff to be forced to sue Texas or New York[-]based organizations in their home [s]tates" since each patient whose claim is at issue is a California resident.

Plaintiff's assertion that "the allegations set forth in the complaint control," notwithstanding, the law does not require this court to accept at face value plaintiff's argument that defendant is a health care service plan regulated by the DMHC and subject to the Knox-Keene Act. (See *Evans v. City of Berkeley*, *supra*, 38 Cal.4th at p. 6 [on demurrer we do not accept the truth of contentions, deductions or conclusions of fact or law].) Moreover, as the issue of misjoinder was not raised by defendant in its demurrer to the operative complaint, nor was it addressed or ruled on by the trial court in sustaining the demurrer, it is unclear why plaintiff asserts this argument at this time. Nonetheless, given that this argument again hinges on plaintiff's position that defendant should be classified as a health care plan and subject to the Knox-Keene Act, we reiterate our conclusion that the demurrer was properly sustained. (See *Williams*, *supra*, 72 Cal.App.4th at p. 731.)

**Leave to Amend**

"'Generally it is an abuse of discretion to sustain a demurrer without leave to amend if there is any reasonable possibility that the defect can be cured by amendment. [Citation.] . . . However, the burden is on the plaintiff to demonstrate that the trial court abused its discretion. [Citations.] Plaintiff must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading. [Citation.]' [Citation.]" (*Goodman v. Kennedy*, *supra*, 18 Cal.3d at p. 349.) "The onus is on the *plaintiff* to articulate the 'specifi[c] ways' to cure the identified defect, and absent such an articulation, a trial or appellate court may grant leave to amend 'only if a potentially effective amendment [is] both apparent and consistent with the plaintiff's theory of the case.' [Citation.]" (*Shaeffer v. Califia Farms, LLC* (2020) 44 Cal.App.5th 1125, 1145, emphasis in original.)

Plaintiff contends that leave to amend should have been granted to permit him to "attach the evidence of coverage to the complaint for the trier of fact to confirm that [UHC was a health

care service plan]," and to "add a DOE to the complaint . . . [that] is in fact regulated by the DMHC and is obligated by the [Knox-Keene Act] to pay quantum meruit, . . ."

We are not persuaded. With regard to the first proposed amendment, plaintiff fails to show how said amendment would state a cause of action under the Knox-Keene Act or impose any obligation pursuant to a quantum meruit theory. This proposed amendment continues to be premised on plaintiff's position as to what he believes the law *should* require of defendant, and not what it actually does. With regard to the second proposed amendment, plaintiff's original and first amended complaint both listed "DOES 1 through 20, inclusive." Granting leave to amend so that plaintiff can "add [another] DOE" does not amount to a "specific amendment[]" that would "cure the identified defect, . . ." (*Shaeffer v. Califia Farms, LLC*, *supra*, 44 Cal.App.5th at p. 1145.) Plaintiff has failed to carry his burden, "[n]or do we perceive on our own an 'apparent' 'potentially effective amendment' that is 'consistent with the plaintiff's theory of the case.' [Citation.]" (*Ibid.*)

We also note that plaintiff amended his original complaint after defendant filed its first demurrer in which it raised the same substantive arguments, and did not cure any of these defects at that time. We view plaintiff's election not to cure these defects previously, and his failure to articulate a potentially effective amendment "as precluding a finding that further possible amendments are apparent and consistent with [his] theory of the case. [Citation.]" (*Shaeffer v. Califia Farms, LLC*, *supra*, 44 Cal.App.5th at p. 1145; accord, *Otworth v. Southern Pacific Transportation Co.* (1985) 166 Cal.App.3d 452, 457 ["When a plaintiff elects not to amend the complaint, it is presumed that the complaint states as strong a case as is possible"].)

Plaintiff has not alleged any facts that remove this dispute from the confines of the CDI regulatory regime and subject it to the Knox-Keene Act and/or DMHC regulatory regime. Moreover, he does not demonstrate that he "could do so if given another opportunity." (*Pacific Bay Recovery, Inc. v. Cal. Physicians' Services, Inc.* (2017) 12 Cal.App.5th 200, 217.) Given that plaintiff's additional allegations rely on the applicability of the Knox-Keene Act, they do not give rise to any valid cause of action. The trial court did not abuse its discretion in denying plaintiff leave to amend his first amended complaint. (See *Goodman v. Kennedy*, *supra*, 18 Cal.3d at p. 349.)

14

## DISPOSITION

The judgment of dismissal is affirmed.  Defendant is awarded its costs on appeal.


_____
Guillemet, J.

We concur:


_____          _____
Kumar, Acting P. J.                              Ricciardulli, J.

Andrew John Holmer (Attorney for Defendant/Respondent)
515 S Flower Street
40th Floor
Los Angeles, CA 90071

Jonathan Nissanoff (Attorney for Plaintiff/Appellant)
1230 S Camden Drive
Los Angeles, CA 90035